I «DOWNING, J.
The defendant, Melvin Jerome Elie, was indicted by a grand jury on the charge of second degree murder in violation of La. R.S. 14:30.1. Defendant pled not guilty and the matter proceeded to trial by jury. A jury adjudged the defendant guilty of the responsive verdict of manslaughter, a violation of La. R.S. 14:31. The defendant moved for a new trial and for post judgment verdict of acquittal, but his motions were denied. Defendant’s Motion to Reconsider Sentence was also denied. The defendant was sentenced to serve twenty years at hard labor.
*692 The defendant timely appealed his conviction and sentence asserting three assignments of error as follows:
1. The trial court erred when it did not grant the defendant’s Batson challenge at the conclusion of the voir dire.
2. The trial court erred when it denied the defendant’s motion for mistrial when a witness testified in court that the defendant was locked up.
3. The trial court erred when it denied the defendant’s motion for mistrial when the prosecutor did not properly turn over evidence of prior convictions of the defendant.
Defendant’s conviction is reversed, his sentence is vacated and this matter is remanded to the trial court for a new trial.

FACTS AND PROCEDURAL HISTORY

On December 8, 2002, Quinton Joseph was shot and killed as he allegedly sat in the back seat of a vehicle being operated by George Smith. Tyrone Butler and Daniel Badon were in the vehicle at the time of the shooting. On the previous night, Mr. Joseph and the defendant were both present at 2042 Sober Street in Baton Rouge, Louisiana, near the location of the shooting. The defendant was engaged in a game of dominos when Mr. Joseph arrived. Mr. Joseph allegedly verbally threatened the defendant and a physical altercation occurred between the two men. Mr. Joseph left the residence allegedly stating, “It ain’t over.”

\,LAW AND ARGUMENT

Batson Challenge
In his first assignment of error, the defendant argues that the trial court erred when it did not grant his Batson challenge at the conclusion of the voir dire. The defendant asserts that the state clearly failed to provide adequate race-neutral reasons for its peremptory challenges, which were specifically directed to exclude a class of people based on their race.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court adopted the following three-step analysis to determine whether or not the constitutional rights of a defendant or prospective jurors had been infringed by impermissible discriminatory practices. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. State v. Burns, 98-0602, p. 19 (La.App. 1st Cir.2/19/99), 734 So.2d 693, 704, writ denied, 99-0829 (La.9/24/99), 747 So.2d 1114.
The second step in this process does not demand an explanation that is persuasive, or even plausible. Because a trial judge’s findings pertaining to purposeful discrimination turn largely on credibility evaluations, such findings ordinarily should be entitled to great deference by a reviewing court. Reasons offered to explain the exercise of peremptory challenges should be deemed race-neutral unless a discriminatory intent was inherent in those reasons. Bums, 98-0602 at pp. 19-20, 734 So.2d at 704.
 For a Batson challenge to succeed, it is not enough that a racially discriminatory result be evidenced; rather, that result must ultimately be traced to a Rracially discriminatory purpose. Thus, the sole focus of the Batson inquiry is *693 upon the intent of the prosecutor at the time he exercised his peremptory strikes. State v. Green, 94-0887, pp. 23-24 (La.5/22/95), 655 So.2d 272, 287.
In the instant case, the parties had to select from three jury panels consisting of forty-two potential jurors. Of the forty-two jurors, twelve were African-American. Of the twelve, the prosecution used peremptory challenges to strike eight and challenged one for cause. The defense struck one African-American. Ultimately, the jury was made up of eleven whites, one black and two alternates, one of which was black. At the close of voir dire, defense counsel raised a Batson challenge and objected to the prosecutor’s use of peremptory challenges to strike potential jurors based solely upon the fact that they were African-Americans.
The trial court found that the defendant met the first prong of Batson and asked the state to provide race-neutral explanations for five of the African-American jurors that the state challenged. At this point, the prosecutor indicated his intent to take writs because he wanted to raise a Batson challenge based on the defense’s striking of white jurors. The trial court stated that it would allow the writs, but the prosecutor decided to wait until after the voir dire challenge. When the prosecutor was unable to give explanations for striking three of the five African-American jurors, the trial court decided to hold the matter over until the next morning. Once again, the prosecutor stated his intent to raise a Batson challenge based on the defense’s striking of white jurors. In response, counsel for defendant provided race-neutral explanations for each white juror that he struck.
The following colloquy took place as a result of the Batson challenge:
THE COURT:
Well, just let me say this: I am concerned the state has challenged eight African-Americans, black jurors. I’m not saying that that’s a valid Bat-son challenge, but I do believe it at least gets us — as you say, Mr. Tray-lor, bottom numbers, it gets us to (sic) past the threshold. So I am going to the next stage. I Uwould like for you to explain your race-neutral reasons for challenging the jurors. And I will assist you in that regard because there are several to me that were obvious. One of which is Ms. Kathleen Cage, Ms. Linda Tyler, and Mr. Germaine Jacobs. So I will accept the race-neutral reasons for the three of them. I will ask you to give me a race-neutral reason for Dimitria Johnson, Ylanda Jordan[,] Tremayne King, Marilyn Sterling, and Gloria Zeno.
[[Image here]]
PROSECUTOR (MR. TRAYLOR):
Tremayne King, he had a hard time with the issue of not showing a gun. He used the example of what if it was a car, could you find — I admit, judge, that was a good job of rehabilitation. But obviously a gun is different from a car. He equivocated. I just didn’t get a good feel for him, judge. He didn’t seem very interested in being here. He was happy when he got off.
With respect to Ms. Gloria Zeno, she had a bunch of family members who have been arrested, having dealt with the criminal justice system. She’s had, I think, — honestly I don’t remember if she was the one who had one nephew shoot another nephew.
Honestly, judge, with respect to Ylanda Jordan and Marilyn Sterling, I don’t remember, judge. I didn’t write in my notes on why I struck those two.
*694 [[Image here]]
PROSECUTOR:
Ms. Zeno concerned me because there’s all this violence in her family, cousins shooting other cousins. And it didn’t — it didn’t seem to bother her as much. We had other jurors come up, Ms. Cicero come (sic) up and talk[ed] to us, and Ms. Myers come (sic) up and talk[ed] to us about crime that had happened in their life, obviously affected by the crime that occurred. I got a sense of detachment about all the violence and murder that’s just not — that it’s just not a big deal, that’s the way things go. It’s sad, but that’s just the way things go. Didn’t seem too concerned about whether one person was punished, or not, or—
THE COURT:
All right. Let’s go back to Johnson, Jordan, and Sterling.
PROSECUTOR:
This may seem trivial, judge, but one thing that bothered me was Ms. Joi’dan couldn’t fit in the seat, and she was having [ fito sit on top of the seat. And I thought of how uncomfortable she would be in here for three days, for one thing, listening to all the testimony.
THE COURT:
That’s not a non — I mean that’s a valid reason. I was concerned about that myself.
PROSECUTOR:
... Another concern that I had was that being a nursing assistant, possibly questioning maybe what the coroner was saying, bringing her own experiences, which I don’t know what they are, into the courtroom, wondering about what the coroner is saying about the bullet projectory (sic), whether its an issue. Her medical background in that case was of a concern because I didn’t know what it was. That’s all I have as far as notes.
Let’s see. Let’s go to Ms. Johnson. She was on the first panel. Her sister was killed by a drunk driver. In talking to her about that, it’s sensitive, it’s difficult. You don’t want to insult anyone. You don’t necessarily want to drag it out of them and have them relive it, but you want to get a feel if there’s some sort of personal outrage about what they felt about that incident. I didn’t get that from — I got more of the — my impression was just more of a things happen, a forgiveness type thing. There’s an issue of alcohol in thi[s] case. Obviously she would be predisposed, not necessarily, and we didn’t get into it, and I was concerned she would be predisposed against someone who takes — you know, uses alcohol and drinks. In this case that is going to be an issue, and I was concerned about her personal experience with a drunk driver. Obviously alcohol was an issue. And I guess I can say this now, judge, that the victim in the case was legally drunk at the time of this killing. That’s an issue and a concern that I had when we were questioning her about the drunk driving incident.
With Ms. Sterling, sometimes I had (sic) a concern about potential jurors with young children. She had a seventeen-month-old, possibly being distracted during the hearing. I don’t know what kind of support system she has backing her up. I don’t know if there’s someone else who can care for the child where that’s not a concern for going late into the night, having long days, possibly going into Friday. I don’t want her attention distracted, so to speak, by worrying about a *695 young infant. Again, I didn’t take very good notes. That’s the notes that I have. That’s all I have.
THE COURT:
The court having sat through the voir dire examination, I am concerned about the number of the challenges because, in|7my opinion, it was a high number of challenges for black jurors by prosecution. I am — and I think the law is that when we pass that initial burden, it’s up to the prosecutor at that point to show the court that he has had race-neutral reasons for exercising those challenges, and those race-neutral reasons can’t be simply gut instincts. They have to be articulated reasons. I am convinced that in his mind, Mr. Traylor did not believe that he was discriminating or exercising challenges for racial reasons and [that] is perhaps why he didn’t take more copious notes to be able to state more specifically for the record what his race-neutral reasons are. I am satisfied with the answers that he has given. I think the law is that as long as those answers do have a basis and they are race-neutral, that the challenge — the peremptory challenges stand. So I find that the Batson challenge is denied.
The Louisiana Supreme Court stated in State v. Collier, 553 So.2d 815, 820-21 (La.1989):
After the prosecutor has presented reasons for his use of a peremptory challenge which on their face are racially neutral, an issue of fact is joined, and the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge.
[[Image here]]
[A] judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact. In order to permit the questioned challenge, the trial judge must conclude that the proffered reasons are, first, neutral and reasonable and, second, not a pretext. These two requirements are necessary to demonstrate ‘clear and reasonably specific ... legitimate reasons.’ Moreover, they serve the goal of demonstrating a ‘neutral explanation related to the particular case to be tried,’ and that ‘the questioned challenges were not exercised solely because of the prospective jurors’ race.’ (Citations omitted.)
In the present case, once the trial court found a prima facie showing of discrimination, the burden shifted to the prosecutor to express racially neutral reasons for striking the five black jurors. However, it does not appear that the trial court assessed the weight and credibility of the explanations, but merely accepted the explanations because they were racially neutral on their face. Therefore, the trial judge applied the incorrect standard in determining the validity of the prosecutor’s reasons for challenging the black jurors by failing to determine whether the prosecutor’s explanation was legitimate and acceptable.
| ^Although a reviewing court should give deference to the trial court in its determination of whether there was purposeful discrimination in the prosecutor’s exercise of peremptory challenges, we decline to do so in the instant case because the trial court applied the incorrect standard. However, it is not necessary to remand the case to the trial court for a hearing on the issue and for application of the correct standard. Even if the trial court had applied the correct standard, the *696 reasons given by the prosecutor were not sufficient to rebut the prima facie showing of discrimination with regard to jurors Dimitria Johnson, Marilyn Sterling and Ylanda Jordan.
Ms. Sterling was excused because she had a seventeen-month-old daughter whom the prosecutor claims he did not want her to be worried about. However, Ms. Sterling also had a seventeen-year-old son and she worked outside the home. Ms. Jordan was excused because she could not fit comfortably in the seat due to her weight. Ms. Jordan was also excused because she was a nursing assistant and the prosecutor did not want her questioning the coroner’s report by bringing in her own experiences, but the prosecutor did not know exactly what those experiences were since he did not question her in depth. Ms. Johnson was excused because a drunk driver killed her sister. Allegedly, alcohol was going to be an issue in this matter. Therefore, the prosecutor assumed that Ms. Johnson would be prejudiced against anyone who uses alcohol and drinks. However, she explicitly stated that she could be a fair juror. We note that upon reviewing the record, alcohol was not an issue in this matter.
We note that there were other members of the venire selected to be on the jury that had young children and had lost family members to violence. The prosecutor did not pursue any consistent, trial-related strategy of striking jurors with the same or similar characteristics. “[T]he fact that a prosecutor excuses one person with a particular characteristic ... and not another similarly situated person | gdoes not in itself show that the prosecutor’s explanation was a mere pretext for discrimination. The accepted juror may have exhibited traits which the prosecutor could have reasonably believed would make him desirable as a juror.” (Citation omitted.) State v. Collier, 553 So.2d at 822.
In the present case, however, the prosecutor did not inquire into the availability of childcare for any juror. Relative to Ms. Jordan, the prosecutor did not specifically question her as to what type of experiences she had as a nursing assistant. Therefore, other than race, there was no legitimate or acceptable reason to exclude these three black jurors. Accordingly, the judgment of the trial court is reversed, defendant’s sentence is vacated and the matter is remanded to the district court for a new trial.
Because we have found reversible error, defendant’s other two assignments of error are moot. However, in the interest of justice, we will still address them.

Motions for Mistrial

In his second and third assignments of error, the defendant avers that the trial court erred when it denied the defendant’s motion for mistrial when a witness testified in court that the defendant was locked up, and his motion for mistrial when the state failed to turn over evidence of the defendant’s prior convictions.

Prejudicial Remark

At the defendant’s jury trial, the state questioned Tyrone Butler as a witness to the shooting in question. Butler testified that on the morning of the shooting he left his home, walked up Fairfields Avenue in the neighborhood where he lives, and met up with Daniel Badon. Next, he and Badon came across George Smith, who was driving, and the two got into the vehicle that Smith was driving. Next, the three men came across Quinton Joseph, who joined the men in the vehicle. Butler was in the front passenger seat, Badon was seated behind him and Joseph was seated behind Smith. Butler testified that while the men rode around, Joseph *697 lintold him that he and the defendant had a fight the day before, but did not tell him what the fight was about. Joseph asked to be let out so that he could go to his aunt’s house. He was dropped off in front of Smith’s mother’s house. The men drove around the block and Joseph got back into the vehicle. Butler testified that the driver’s side door was open when the defendant walked up to the vehicle and shot Joseph. Butler testified that he removed a gun from Joseph after he was shot and hid it in some bushes. He further testified that he did not tell the police that he knew the defendant’s name because the defendant was still out on the street. When questioned why he never told the police about Joseph having a gun, Butler testified as follows:
Q. Why didn’t you tell the police?
A. Why didn’t I tell them?
Q. Yes.
A. When I was downtown, I was shook up. I ain’t want to tell them nothing, man. We got to live on the street, and y’all want us to tell y’all all this stuff man.
Q. Are you scared of Melvin?
A. I was when we had — you know, when — you know what I’m saying because—
Q. Are you still scared of Melvin?
[[Image here]]
Q. Are you scared of Melvin?
A. Not no more.
Q. Why?
THE COURT: Whoa, whoa. DEFENSE (MR. MESSINA): Wait. THE COURT: Approach the bench.
[[Image here]]
I^THE COURT: I’m not going to let you — because I think his answer is going to be because he’s locked up. I’m not going to allow that.
On cross-examination, the state questioned Butler about a photo line-up that he was shown by the police following the shooting. The following colloquy took place:
Q. This has previously been marked as state 2. Do you remember them showing you this picture?
A. Yes.
Q. And I ask you today, do you recognize anybody — of those six photos, do you recognize anybody?
A. Yes, I recognize one.
Q. Which one do you recognize?
A. I recognize Melvin.
Q. Okay. Which one is Melvin?
A. He’s the fifth one.
Q. He’s got a number 5 above his head?
A. Yes, sir.
Q. What did you tell the police when they showed you this picture?
A. I told them I ain’t know who he was because he was still out.
Q. So you lied to the police, didn’t you?
A. Yes. But the police wouldn’t go to my house if they came on (sic) there shooting, or anything. Y’all wasn’t going to watch over me, man. I just wait til he come to court. He locked up now, and I feel safe.
The defense objected to Butler stating in the presence of the jury that the defendant was “locked up.” The defense moved for a mistrial on the grounds that it was prejudicial to the defendant. The trial was recessed and a bench conference was held to decide whether a mistrial was warranted. After hearing argument from both parties and reviewing the law, the trial court determined that a mistrial was |12not warranted, but rather, an admonition was the appropriate remedy. Therefore, the *698 following admonition was prepared by the defense and read to the jury:
Currently, Mr. Melvin Elie is incarcerated at the East Baton Rouge Parish Prison and has been since he voluntarily surrendered to authorities after being asked to do so. Mr. Elie elected not to post a bond after being arrested so that he would have the funds necessary to prepare and present his defense.
We must determine whether the trial court erred in giving an admonition to the jury instead of granting a mistrial for the witness’s remark.
In a criminal proceeding, prejudicial remarks may be grounds for a mistrial. Louisiana Code of Criminal Procedure article 770 sets forth the basis for a mistrial when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument. In the instant case, Article 770 is not applicable because the comment in question was not made by any of the aforementioned persons, but rather a witness.
Louisiana Code of Criminal Procedure article 771 provides guidance when a witness makes a remark or comment within the hearing of the jury. That article provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
[[Image here]]
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
The defendant argues that the trial judge should have granted the motion for mistrial since it creates an issue as to the credibility of the defendant; whether the | ^defendant should take the stand or exercise his right to remain silent, which is afforded to him by the Fifth Amendment of the U.S. Constitution.
Mistrial is a drastic remedy which is warranted only if substantial prejudice results that would deprive defendant of a fair trial, and the ruling of the trial court will not be disturbed absent an abuse of discretion. State v. Welch, 448 So.2d 705, 710 (La.App. 1st Cir.), writ denied, 450 So.2d 952 (La.1984); State v. Clay, 441 So.2d 1227, 1231 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1213 (La.1984). The trial judge is given wide discretion to determine whether a fair trial is impossible, or if an admonition is adequate to assure a fair trial when prejudicial conduct does not fit within the mandatory mistrial provisions of La.Code Crim. P. art. 770. State v. Belgard, 410 So.2d 720, 724 (La. 1982). The state argued that an admonition was the appropriate remedy because any rational person would conclude that someone who is on trial for murder would necessarily be locked up unless he made bail.
We have reviewed the applicable law, jurisprudence, and the trial transcript, including the testimony in question. We agree with the state’s argument that one could easily conclude that a person on trial for murder would be in jail unless they *699 posted a bond. Article 771 instructs the court to promptly admonish the jury to disregard a remark made during trial that might create prejudice against the defendant in the mind of the jury. That article also gives the court the discretion to grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. In the instant case, the trial transcript reflects that the trial court found that a mistrial was not warranted, but instead an admonishment was proper. We agree with the trial court’s finding. This assignment of error is without merit.
| uDuty to Disclose
In his final assignment of error, the defendant asserts that the trial court erred when it denied his motion for mistrial when the state failed to turn over evidence of his prior convictions. The defendant asserts that the state withheld prior conviction information and violated its duty to disclose such information.
In response to defendant’s Motion for Discovery and Inspection, the state submitted a rap sheet to the defense. The rap sheet reflected that the defendant had fifteen arrests and one conviction. On cross-examination, however, the state questioned the defendant about convictions other than the one conviction reflected on the rap sheet. Counsel for the defendant objected, arguing that the state violated La.Code Crim. P. art. 729.3, by failing to notify him of the defendant’s prior convictions. The state countered by arguing that it did not have possession of the files evidencing the convictions but had taken notes from the files reflecting which arrests had actually led to convictions.
The discovery rules require the court, upon the defendant’s motion, to order the district attorney or the appropriate law enforcement agency “to furnish to defendant a copy of any record of his criminal arrests and convictions that is in their possession or custody.” La.Code Crim. P. art. 717. Louisiana Code of Criminal Procedure article 729.3 requires a party to promptly notify the other party and the court of the existence of additional evidence discovered after compliance with an earlier discovery order. If at any time during the course of the proceedings, it is brought to the court’s attention that a party has failed to comply with discovery, the court has several options. The court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial (on the defendant’s motion), prohibit the party from introducing into evidence the subject matter that was not disclosed, or enter such order, other than dismissal, as may be appropriate. La. Code Crim. P. art. 729.5(A).
|1sIn the instant case, the defendant moved for a mistrial. In State v. Selvage, 93-1435, pp. 5-6 (La.App. 1st Cir.10/7/94), 644 So.2d 745, 750, writ denied, 94-2744 (La.3/10/95), 650 So.2d 1174, it was noted, in pertinent part:
Mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. Failure to comply with discovery merits a mistrial only when the state’s conduct substantially affects the defendant’s right to prepare a defense. State v. Hooker, 623 So.2d 178, 182 (La.App. 2nd Cir.1993). See also State v. Bourque, 622 So.2d 198, 239 (La.1993).
The articles regulating discovery are intended to eliminate unwarranted prejudice which could arise from surprise testimony. Discovery procedures enable the defendant to properly assess the strength of the state’s case against him in order to prepare his defense. If a defendant is lulled into a misapprehension of the strength of the state’s case *700 by the failure to fully disclose, such prejudice may constitute reversible error. State v. Johnson, 604 So.2d 685, 691 (La.App. 1st Cir.1992), writ denied, 610 So.2d 795 (La.1993). The state’s failure to comply with discovery requests does not constitute reversible error unless actual prejudice results to the defendant. See State v. Busby, 464 So.2d 262, 264(La.), cert denied, 474 U.S. 873, 106 S.Ct. 196, 88 L.Ed.2d 165 (1985).
In the instant case, in reaching its decision on the motion for mistrial, the trial court referred to Selvage. In Selvage, the defendant was on trial for aggravated burglary. The defendant admitted on direct examination to being previously convicted of attempted first-degree robbery, aggravated battery and simple criminal damage to property. When the state indicated its intent to question the defendant on cross-examination about his prior convictions, defense counsel objected on the ground that the state was trying to question defendant about convictions that were not reflected in the state’s answer to defendant’s discovery motion. The prosecutor revealed that he had given defendant a copy of the most recent rap sheet, but during trial, when he discovered that the defendant was going to testify, he had his investigator check records in the district attorney’s office to find the disposition of the arrests that appeared on the defendant’s rap sheet. 11fiDefense counsel argued that the state’s failure to provide the information earlier violated its continuing duty to provide discovery material.
In Selvage, 93-1435 at pp. 6-7, 644 So.2d at 750, this court determined that because the district attorney’s office had, in its own records, additional information concerning defendant’s criminal record, the state did not completely respond to defendant’s request when it merely produced a copy of the rap sheet prepared by the Louisiana State Police. This court found, however, the rap sheet contained enough information to put the defense on notice that other convictions might exist and that defendant’s attorneys could have supplemented the discovery motion if they wanted additional information about defendant’s record, which might be contained in the district attorney’s records. After reviewing the record, this court ruled that the state’s failure to timely provide the defense with information regarding the additional convictions was not reversible error.
In the instant case, the prosecutor, using defendant’s rap sheet, did not pull the flies, but prepared written notes of the arrests that led to convictions from the files located in the criminal records section of the clerk of court’s office. The record reflects that the state had possession of notes, not flies, reflecting convictions after defendant’s motion for discovery and prior to trial. The trial court recessed and allowed the defense to research defendant’s prior convictions. The trial court noted that defense counsel had the rap sheet and supplemental answers to discovery since February 27, 2003. The prosecutor obtained a certified, stamped copy of the actual documents verifying the defendant’s convictions during the court’s recess. The trial court stated:
Let me say for the record that I think— I think that sometimes we mince words, and we look at what the words mean in the statute, and sometimes we play games. And I think that we are all required to follow the rules. And I have to determine if somebody violates the rules, what the result is. I would say that this is a close case. It almost walks the line. And I will also say that if the state had not provided the defense with that extensive rap sheet, I would have granted a 117mistrial. But they did provide them with enough information in *701 this case that I believe a mistrial in this case is too drastic a remedy. I will deny any mistrial. Anything else.
We find the failure of the state to furnish defense counsel with a copy of defendant’s convictions that the prosecutor discovered during his check of defendant’s records to be a violation of its continuing duty to disclose. Louisiana Code of Criminal Procedure article 729.3, in pertinent part, clearly provides that if a party discovers additional evidence or decides to use additional evidence that is subject to discovery he shall promptly notify the other party and the court of the existence of such evidence. (Emphasis added.) Article 729.3 does not, as the prosecutor argued, require that a party have actual “possession” of the evidence, but rather when a party “discovers” or decides to use additional evidence then such party is mandated to promptly notify the other party and the court.
Because we have found that the state violated the discovery rules, we must now determine whether the violation caused the defendant to suffer such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial, thus warranting a mistrial. Failure to comply with discovery merits a mistrial only when the state’s conduct substantially affects the defendant’s right to prepare a defense. Selvage, 93-1435 at p. 6, 644 So.2d at 750.
Furthermore, by testifying a defendant subjects himself to inquiry about his criminal convictions. However, the prosecutor can question a defendant only about offenses for which he or she has been convicted. See La.Code Evid. art. 609.1. The following colloquy occurred at a side bar:
DEFENSE (MR. MESSINA):
Let me ask the court, if you would, if the court would ask the district attorney, does he have those copies of those convictions in his possession right now.
PROSECUTOR (MR. TRAYLOR):
No, I do not.
|1SDEFENSE:
What information are you relying on then, I would ask you.
THE COURT:
How are you going to prove them because you can’t ask the question unless you know that he has convictions? How are you going to prove these convictions, because you’re not allowed to ask that question unless you know that there are in fact convictions.
[[Image here]]
THE COURT:
You need to prove them. He’s denied them, so you need to prove them.
PROSECUTOR:
I will have to go back and pull all the files now.
DEFENSE:
Your Honor, the response I have to that is now my client is up there and it looks like he’s impeached himself because the state said, oh, you didn’t get a conviction here, you didn’t get convicted in 1978 for possession of marijuana; you didn’t get convicted for this.
At this time, the court recessed the trial in order to allow the prosecutor to gain possession of the files reflecting defendant’s convictions.
Louisiana Code of Criminal Procedure article 770(2) applies in this case. That article provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the *702 jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
[[Image here]]
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
[[Image here]]
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish |i9the jury to disregard the remark or comment but shall not declare a mistrial.
We find the defendant was substantially prejudiced by the prosecutor’s failure to comply with its duty to disclose. The prosecutor’s failure to supplement discovery caused the defendant to misjudge the strength of the state’s ease such that he testified when he did not know that the prosecutor was going to question him about previous convictions not reflected on the rap sheet provided in response to the defendant’s initial request for discovery. In addition, the defendant appeared to impeach himself before the jury when the prosecutor questioned him about prior convictions. The defendant clearly requested a mistrial. We disagree with the trial court that a mistrial is too drastic a remedy under the circumstances of this matter.
We find the trial court’s decision to deny the motion for mistrial to be reversible error. In accordance with our earlier finding of reversible error on the Batson challenge, defendant’s conviction is reversed, his sentence is vacated and this matter is remanded for a new trial.
DECREE
For the foregoing reasons, we reverse the conviction, vacate the sentence and remand this matter to the trial court for a new trial.
CONVICTION REVERSED, SENTENCE VACATED AND REMANDED TO TRIAL COURT FOR A NEW TRIAL.
HUGHES, J., concurs with reasons.
WHIPPLE, J., dissents and would affirm the conviction and sentence.