936 So.2d 791 (2006)
STATE of Louisiana
v.
Melvin ELIE.
No. 2005-K-1569.
Supreme Court of Louisiana.
July 10, 2006.
Rehearing Denied September 15, 2006.
*793 Charles C. Foti, Jr., Attorney General, Douglas P. Moreau, District Attorney, Kory J. Tauzin, Jeff W. Traylor, Assistant District Attorneys, for applicant.
Joseph R. Messina, for respondent.
KNOLL, Justice.
This case concerns a criminal defendant, Melvin Elie, who was indicted for second-degree murder, but convicted of manslaughter, a responsive verdict, by the jury. The court of appeal reversed the defendant's conviction and sentence on defendant's challenges of jury discrimination based on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and on the State's violation of discovery rules. We granted the State's writ, State v. Elie, 05-1569 (La.2/3/06), 922 So.2d 1154, to primarily address the jury equal protection issue under Batson in connection with the precepts of three recent decisions by the United States Supreme Court, Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), and Rice v. Collins, 546 U.S. ___, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006). For the following reasons, we reverse.

FACTS AND PROCEDURAL HISTORY
On December 7, 2002, defendant, Melvin Elie, was playing dominos at Howard McGruder's house on Sobers Street in Baton Rouge, Louisiana, when Quinton Joseph arrived and threatened him. After a physical altercation ensued between Joseph and defendant, Joseph left the residence, telling the defendant, "It ain't over."
On the next day, Joseph, Tyrone Butler, and Daniel Badon were passengers in a vehicle George Smith was driving. At some point, Joseph asked Smith to drop him off near McGruder's house. Shortly thereafter, Smith returned to pick up Joseph and found him arguing with defendant. When Joseph entered the car, defendant fired several rounds at him; three rounds struck Joseph, killing him instantly. Although investigators recovered several bullets used in the shooting, they were never able to locate the murder weapon.
A grand jury indicted the defendant with second-degree murder, a violation of LA.REV.STAT. ANN. § 14:30.1. Defendant entered a plea of not guilty and the matter proceeded to trial by jury. In the present *794 case, of the 42 potential jurors, 12 were African-American. Of those 12, the State used peremptory challenges to strike eight and challenged one for cause. The defense also struck one African-American. Ultimately, the jury included two African-Americans, one of whom served as an alternate. Following voir dire, the defense raised a Batson objection, claiming the State used its peremptory challenges to strike potential jurors based solely upon the fact they were African-American.[1] After conducting a hearing, the trial judge denied the defense's Batson objection.
At the conclusion of the State's case-in-chief, the defendant testified, contending he had acted in self-defense. In a near unanimous vote, 11 to 1, the jury found the defendant guilty of the responsive verdict of manslaughter, a violation of LA.REV. STAT. ANN. § 14:31. The trial court denied defendant's motions for a new trial and for post-judgment verdict of acquittal. The trial judge sentenced defendant to serve twenty years at hard labor, and later denied defendant's motion to reconsider sentence.
The defendant timely appealed his conviction and sentence asserting the trial court erred when: (1) it did not grant the defendant's Batson challenge at the conclusion of voir dire; (2) it denied the defendant's motion for mistrial when a witness testified in court the defendant had been locked up;[2] and, (3) it denied the defendant's motion for mistrial when the State did not properly turn over evidence of defendant's prior convictions.[3] Finding merit to defendant's assignments of error pertaining to defendant's Batson challenge and the State's failure to disclose defendant's prior convictions, the appellate court reversed the defendant's conviction, vacated his sentence, and remanded the case to the trial court for a new trial. State v. Elie, 04-1610 (La.App. 1 Cir. 3/24/05), 899 So.2d 689. Commenting further, the appellate court criticized the trial court's approach to defendant's Batson challenge, finding:
[I]t does not appear that the trial court assessed the weight and credibility of the explanations, but merely accepted the explanations because they were racially neutral on their face. Therefore, the trial judge applied the incorrect standard in determining the validity of the prosecutor's reasons for challenging the black jurors by failing to determine whether the prosecutor's explanation was legitimate and acceptable.

Elie, 899 So.2d at 695.
The court of appeal further found a remand to the trial court for a hearing on the issue was unnecessary because the State's reasons failed to rebut the prima facie showing of discrimination with regard to potential jurors Dimitria Johnson, Marilyn Sterling, and Ylanda Jordan. Id., 899 So.2d at 696.

BATSON CHALLENGE
The State contends the appellate court misapplied Batson's three-step test and substituted its reasoning for that of the trial court. The State's contention requires *795 us to examine the test enunciated in Batson and incorporated in LA.CODE CRIM. PROC. ANN. art. 795,[4] and three recent United States Supreme Court decisions, Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), and Rice v. Collins, 546 U.S. ___, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006).
In the present case, the State exercised eight peremptory challenges against African-American jurors. After the defendant raised his Batson challenge, the trial judge determined the defendant had made a prima facie showing of discriminatory strikes as to eight jurors. The principal question before this Court is the equal protection issue first discussed in Batson and recently elaborated upon in Johnson, Miller-El, and Collins.
The Supreme Court in Batson held that an equal protection violation occurs if a party exercises a peremptory challenge to exclude a prospective juror on the basis of a person's race. See also LA.CODE CRIM. PROC. ANN. art. 795, supra n. 4. If the defendant makes a prima facie showing of discriminatory strikes, the burden shifts to the State to offer racially-neutral explanations for the challenged members. The neutral explanation must be one which is clear, reasonable, specific, legitimate and related to the particular case at bar. State v. Collier, 553 So.2d 815, 820 (La.1989). If the race-neutral explanation is tendered, the trial court must decide, in step three of the Batson analysis, whether the defendant has proven purposeful discrimination. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). A reviewing court owes the district judge's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Hernandez v. New York, 500 U.S. 352, 364, 111 S.Ct. 1859, 1868-69, 114 L.Ed.2d 395 (1991); Batson, 476 U.S. at 98, n. 21, 106 S.Ct. at 1724.
The Batson explanation does not need to be persuasive, and unless a discriminatory intent is inherent in the explanation, the reason offered will be deemed race-neutral. Purkett, 514 U.S. at 767, 115 S.Ct. at 1771. The Hernandez court explained:
A neutral explanation in the context of our analysis here means an explanation *796 based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the [party's] explanation, the reason offered will be deemed race neutral.
Hernandez, 500 U.S. at 359, 111 S.Ct. at 1866. The ultimate burden of persuasion remains on the party raising the challenge to prove purposeful discrimination. Purkett, 514 U.S. at 767-68, 115 S.Ct. at 1771; Hernandez, 500 U.S. at 359, 111 S.Ct. at 1866.
In three recent cases, the Supreme Court reaffirmed Batson and elaborated upon several issues associated with that seminal decision. First, in Johnson, the Court settled years of debate in federal and state courts on the question of how a moving party may satisfy Batson's first-step requirement for the establishment of a prima facie case of purposeful discrimination. Johnson makes it abundantly clear that a moving party need only produce "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." Id., 545 U.S. ___, 125 S.Ct. at 2417. In the second case, Miller-El, the Court made clear Batson's admonition to consider all relevant circumstances in addressing the question of discriminatory intent requires close scrutiny of the challenged strikes when compared with the treatment of panel members who expressed similar views or shared similar circumstances in their backgrounds. Miller-El neither established a new standard of review for Batson claims in Louisiana, see Collier, 553 So.2d 815 (La.1989), nor replaced the Court's earlier pronouncement in Hernandez, 500 U.S. at 370, 111 S.Ct. at 1859. As Miller-El makes clear, the one relevant circumstance for a trial judge to consider is whether the State articulated "verifiable and legitimate" explanations for striking other minority jurors. Moreover, it did make clear that:
a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives . . . . If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.
Miller-El, 545 U.S. ___, 125 S.Ct. at 2417. Finally, in the third case, Collins, the Court effectively held Miller-El does not mean the failure of one or more of the State's articulated reasons for striking a prospective juror compels a trial judge to find the State's remaining articulated race neutral reasons necessarily cloaked discriminatory intent. Giving recognition to the broad discretion Batson accords the trial judge in ruling on the fact-intensive question of whether race was significant in determining who was challenged and who was not, Collins admonishes appellate courts from substituting their evaluation of the record for that of the trial judge. Collins, 546 U.S. at ___, 126 S.Ct. at 969.
Considering Batson and the recent jurisprudence that has fleshed out the complexities involved in this process, the principle is nonetheless well established that a single strike based upon race supports a Batson claim and requires reversal no matter how ably the State has defended the other strikes. Batson, 476 U.S. at 95, 106 S.Ct. at 1722. Against this jurisprudential background, we now proceed to explore the State's argument in light of the record developed in the present case.
We will first address a group of three jurors, Linda Tyler, Kathleen Cage, and Germaine Jacobs. With regard to these jurors, the trial judge found the exclusionary reasons were so obvious it would not require the State to offer any explanation for these strikes.
*797 From the outset, we note this procedure does not accord with the observation in Johnson that the Court's evolving Batson jurisprudence "is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process . . . . [T]he inherent uncertainty present in inquiries of discriminatory purpose counsel against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question." Johnson, 545 U.S. at ___, 125 S.Ct. at 2418 (emphasis added). Notwithstanding this non-compliance with the observation the United States Supreme Court made in Johnson, we find LA.CRIM.CODE ANN. art. 795(C) does not require articulation if "the court is satisfied that such reason is apparent from the voir dire examination of the juror." See, State v. Baker, 34,973 (La.App. 2 Cir. 9/26/01), 796 So.2d 145; State v. Gibbs, 31,370 (La.App. 2 Cir. 2/24/99), 728 So. 945, writ denied, 99-1075 (La.9/24/99), 747 So.2d 1118. Our review of the record amply demonstrates why the trial judge felt justified in its determination that the reasons were apparent from the voir dire examination of these three jurors. Tyler was steadfast she was raised to believe "judge ye not," and she did not "want nobody's burden" on her shoulders. Cage generally opposed the mandatory penalty of life imprisonment at hard labor for second-degree murder, in part because she had a nephew serving that sentence and "he didn't do it." Additionally, defense counsel had represented Cage's husband in a criminal case and had also represented her in a related forfeiture proceeding that returned several thousand dollars to her.[5] Jacobs, like Cage, was greatly reluctant "with sending any person, male, female, to jail for life, personally . . . I really couldn't have that on my conscience." Also, Jacobs had a close friend whose sister had been killed by her estranged husband who had been stalking her for a while. Jacobs expressed the police could have taken steps to prevent the murder, although he stated he would not hold that experience against the State.
Even without the State's verbalization of reasons, our review of the voir dire testimony of Tyler, Cage, and Jacobs provides legitimate, verifiable, race-neutral reasons to explain the State's use of peremptory challenges against them. The State's continued wariness of a prospective juror despite assurances the juror will remain impartial does not necessarily establish discriminatory purpose. Collins, 545 U.S. ___, 126 S.Ct. at 875.
The trial court then identified a second group of peremptory strikes the State exercised involving excused jurors Tremaine King, Gloria Zino, Ylanda Jordan, Dimitria Johnson, and Marilyn Sterling.[6] It then asked the State to provide race-neutral *798 explanations for the challenged African-American jurors.
The State first addressed potential juror Tremayne King. The State articulated that a trial issue existed because the murder weapon was never recovered. For that reason, he was bothered by Mr. King's concern over "the issue of not showing a gun." He made clear he could not return a verdict of guilt on the basis of testimony from a single eyewitness claiming he saw the defendant with a gun and he then used it to kill the victim. "If you don't have a weapon," King remarked, "in a way you don't have the hand that did it. You follow me? Because you need fingerprints or something." King also related the story of his good friend who had been convicted by a jury for murder for "killing a guy and injuring some more people at the Martin Luther King Parade." Mr. King believed his friend innocent and the jury had been swayed by the children injured in the shooting and the victim's mother who did not care who got incarcerated "as long as somebody paid the price for her son dying . . . ." That experience taught Mr. King to disagree with the mandatory sentence of life imprisonment for the crime. Finally, the State further stated Mr. King appeared happy when he was peremptorily struck.
As for potential juror Gloria Zeno, the State noted she seemed indifferent to the notion of crime and punishment when she revealed with unusual aplomb that one of her nephews had been killed in an apparently gratuitous shooting and she had "quite a few family members" who had been arrested. While Ms. Zeno insisted those experiences would not affect her performance as a juror, she later revealed two other nephews had argued and one killed the other. Still other relatives had been arrested for drugs "so there's been a lot of crime in the family, a lot of things have happened in the family."
The State admitted to having reservations about potential juror Ylanda Jordan because her medical background as a nursing assistant might lead her to question the coroner's testimony.[7] The State was *799 concerned Ms. Jordan might be inclined to second-guess the Coroner's testimony, particularly as to the trajectory of the bullets which took the victim's life.[8]
With respect to potential juror Dimitri Johnson, the State pointed out a drunk driver killed her sister and he worried she might be "predisposed against someone who uses alcohol and drinks." The State elaborated that the victim in the present case died legally intoxicated and that was "an issue and a concern I had when we were questioning her about the drunk driving incident."
Finally, the State explained it struck potential juror Marilyn Sterling because she was a single mother with a 17-month-old child to care for with no evident support system other than her teenage son. The State thereby sought to allay its concern this juror would be distracted "by worrying about a young infant."
Based on the State's reasons, the trial court ruled:
The court having sat through the voir dire examination, I am concerned about the number of the challenges because, in my opinion, it was a high number of challenges for black jurors by [the] prosecution. I am  and I think the law is that when we pass that initial burden, it's up to the prosecutor at that point to show the court that he has had race-neutral reasons for exercising those challenges, and those race-neutral reasons can't be simply gut instincts. They have to be articulated reasons. I am convinced that in his mind, Mr. Traylor [the prosecutor] did not believe that he was discriminating or exercising challenges for racial reasons and [that] is perhaps why he didn't take more copious notes to be able to state more specifically for the record what his race-neutral reasons are. I am satisfied with the answers that he has given. I think the law is that as long as those answers do have a basis and they are race-neutral, that the challenge  the peremptory challenges stand. So I find that the Batson challenge is denied.
On appeal, however, the Fourth Circuit criticized the trial court's approach, finding the trial court failed to assess the weight and credibility of the State's explanation. In particular, it found the trial court failed to determine "whether the prosecutor's explanation was legitimate and acceptable." Elie, 899 So.2d at 695.
Our review of the record, however, shows the trial court's rejection of the defense's Batson challenge resulted from more than a cursory approval of the State's proffered non-racial explanations. *800 To the contrary, the voir dire transcript establishes the trial court reached its decision after considering argument by both sides which facilitated a conclusion about the weight and credibility to be given to the State's racially-neutral explanations.
The trial court ruling reproduced above made clear the State's proffered reasons appeared race-neutral because they were grounded in fact, rather than irrational or intuitive reasons. The trial court's ruling also reflected it considered the State's demeanor in deciding if a discriminatory objective was the basis for the State's peremptory challenges. Hernandez, 500 U.S. at 365, 111 S.Ct. at 1869 ("best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge"). As such, the trial judge's finding starkly contrasts to the trial judge in Collier who simply stated, "So it's my understand [sic] and position is all I  is the D.A. gives his reasons. So long as they are not based on race, I have to find that they're satisfactory". Collier, 553 So.2d at 821, n. 9. Thus, contrary to the appellate court's analysis, our review shows the trial court carefully scrutinized the State's racially neutral reasons as Collier requires.
Moreover, we find the appellate court erred in its determination the State's reasons for striking prospective jurors Johnson, Sterling, and Jordan were not sufficiently race-neutral. Elie, 899 So.2d at 696. In the view of the appellate court, Ms. Johnson's statement that she could be a fair juror negated any potential bias stemming from her sister's death at the hands of a drunk driver. While the appellate court's reasoning might be applicable if the State had challenged Ms. Johnson for cause, Ms. Johnson's promise to be fair did not bind the State in its exercise of a peremptory challenge. In addition, despite the appellate court's finding alcohol was not an issue in this matter, the State points out defense counsel cross-examined the State's witnesses about the victim's alcohol consumption on the day of the instant offense. In addition, defense counsel questioned the Coroner about the victim's blood alcohol level.
As for Ms. Sterling, the court of appeal noted other members of the venire selected on the jury had young children. Notwithstanding the appellate court's observation, the fact jurors of different races share a similar characteristic is not dispositive when deciding whether an explanation has been pretextual. See Collier, 553 So.2d at 822 ("[T]he fact that a State excuses one person with a particular characteristic. . . and not another similarly situated person does not in itself show that the State's explanation was a mere pretext for discrimination. The accepted juror may have exhibited traits which the State could have reasonably believed would make him desirable as a juror.")(Emphasis added). As the State argued during voir dire, Jamie Covington, a potential juror with a 13-day-old baby, was not struck because his wife was a stay-at-home mother whereas Ms. Sterling was a single mother, who had a day job, and a teenage son.
Finally, with respect to Ms. Jordan, although the appellate court rejected the State's explanation her experience as a nursing assistant might lead her to second-guess the Coroner's testimony, race-neutral explanations for excusing venire persons based on their occupations are routinely upheld. See United States v. Griffin, 194 F.3d 808, 825 (7th Cir.1999)(juror's occupation is a legitimate, race-neutral basis on which to strike a juror). As the record in the present case exemplifies, the defense struck potential juror Ester Bucher based on her employment as a nurse, because her occupation *801 might influence her consideration of the coroner's testimony.
In conclusion, we find the equal protection arguments defendant advanced must fall. Applying Batson, as further elaborated upon in Johnson, Miller-El, and Collins, we find the State, in presenting race-neutral reasons for its excusal of prospective jurors, need not present an explanation that is persuasive, or even plausible; unless a discriminatory intent is inherent in the State's explanation after review of the entire record, the reason offered will be deemed race-neutral. Purkett, 514 U.S. at 767, 115 S.Ct. at 1771. A reviewing court owes the trial court's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Hernandez, 500 U.S. at 364, 111 S.Ct. at 1868-1869; Collins, 546 U.S. at ___, 126 S.Ct. at 969. A review of the State's explanations in the case sub judice reveals no discriminatory intent. The court of appeal failed to make a compelling case for disturbing those findings in the case sub judice. Accordingly, we reverse the appellate court's analysis and resolution of the defendant's Batson claim.

MISTRIAL
The State further claims the court of appeal erred in reversing the trial court's ruling that the State's failure to turn over evidence of defendant's prior convictions did not warrant a mistrial.
Prior to trial, the State turned over defendant's rap sheet which showed 15 arrests and one conviction for disturbing the peace. At trial, the defendant took the stand to testify in support of his contention he had acted in self-defense. On cross-examination, the State questioned defendant about convictions other than his disturbing the peace conviction reflected on the rap sheet; in particular, the State confronted the defendant with a guilty plea he had entered in February 1998 to simple battery, as well as guilty pleas to possession of marijuana in April 1996 and July 2000. Defense counsel objected, arguing the State violated LA.CODE CRIM. PROC. ANN. art. 729.3 when it failed to notify him of defendant's other prior convictions. The State claimed it did not have possession of the files revealing the convictions, but had prepared written notes of the arrests that led to convictions from the files in the archives. Defense counsel then moved for a mistrial.
The trial court recessed and allowed defense counsel to research defendant's prior convictions. The trial court noted defense counsel had the rap sheet and supplemental answers to discovery since February 27, 2003, approximately seven months before defendant's trial. During the court's recess, the State obtained a certified, stamped copy of the actual documents verifying defendant's convictions. The trial court then ruled:
Let me say for the record that I think  I think that sometimes we mince words, and we look at what the words mean in the statute, and sometimes we play games. And I think that we are all required to follow the rules. And I have to determine if somebody violates the rules, what the result is. I would say that this is a close case. It almost walks the line. And I will also say that if the state had not provided the defense with that extensive rap sheet, I would have granted a mistrial. But they did provide them with enough information in this case that I believe a mistrial in this case is too drastic a remedy. I will deny any mistrial.
LA.CODE CRIM. PROC. ANN. art. 717 requires the State to turn over copies of the defendant's arrest and conviction record. Moreover, the duty to disclose is *802 a continuing one, requiring the State, if it discovers or obtains evidence prior to or during trial, to notify the other party and the court promptly of the existence of the additional evidence. LA.CODE CRIM. PROC. ANN. art. 729.3. The discovery rules, LA.CODE CRIM. PROC. ANN. art. 716-729.6, are intended to eliminate any unwarranted prejudice which could arise from surprise testimony. See State v. Toomer, 395 So.2d 1320, 1329 (La.1981). However, not every failure by the State to comply with these rules automatically requires a reversal. Only when such a failure results in prejudice to the defendant does it constitute reversible error. Thus, in the event the State failed to comply with the discovery rules, it must be determined whether the non-disclosure actually prejudiced the defendant and whether the trial court abused its discretion. See State v. Vaccaro, 411 So.2d 415, 427 (La.1982).
As the trial court found in the present case, the State clearly violated the discovery provisions when it revealed defendant's additional prior convictions to defense counsel for the first time during its cross-examination of the defendant. Nevertheless, the record fully shows the State had provided the defendant with his rap sheet showing his numerous arrests, along with a conviction for disturbing the peace, and this information had been in the defense counsel's possession for seven months prior to trial. Thus, the rap sheet in this case contained enough information to put the defense on notice other convictions might exist and certainly should have jogged the defendant's memory as to the criminal dispositions of those arrests. See United States v. Capote-Capote, 946 F.2d 1100, 1105 (5th Cir.1991), cert. denied, 504 U.S. 942, 112 S.Ct. 2278, 119 L.Ed.2d 204 (1992). Clearly, the trial court's remarks to defense counsel in the present case evidenced its consideration of this factor:
Fifteen arrests didn't signify a flag? I mean, honestly, fifteen arrests didn't signify a concern to look in the court records to see whether or not there were convictions here, or not? I mean, you had this information.
It was the defendant's actions which served as the catalyst for the existence of the extensive rap sheet. Given defendant's rather extensive record, of which defense counsel and defendant were aware, there is little to suggest the State's failure to disclose his additional misdemeanor convictions for marijuana possession and simple battery prejudiced defendant. See State v. Milto, 99-0217(La. App. 1 Cir. 11/5/99), 751 So.2d 271, 277-278, writ denied, 00-0318 (La.9/15/00), 769 So.2d 2 (State's failure to disclose defendant's prior conviction for resisting arrest did not constitute reversible error; defendant had extensive record of which defense counsel was aware). Aside from the appellate court's conclusive statement that the State's failure to supplement its discovery responses led defendant to misjudge the strength of the State's case, there is no showing defendant's trial strategy would have differed. Under these circumstances, the State's failure to disclose defendant's additional convictions did not result in substantial prejudice. In accord LA.CODE CRIM. PROC. ANN. art. 921.[9] Accordingly, we find the appellate court erred in finding the trial court's denial of the motion for mistrial constituted reversible error.

DECREE
For the foregoing reasons, we reverse the appellate court's judgment. We reinstate *803 the defendant's jury conviction and the trial court's imposition of a sentence of twenty years at hard labor.
REVERSED; DEFENDANT'S CONVICTION AND SENTENCE AFFIRMED.
CALOGERO, C.J., and KIMBALL, dissent and assign reasons.
JOHNSON, J., dissents.
CALOGERO, Chief Justice, dissenting and assigning reasons.
I respectfully dissent from the majority's reversing the ruling of the court of appeal. First, I agree with my dissenting sister justice that the district court, once it determined that the defendant had made a prima facie case of racial discrimination, was required by Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), and Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005), to elicit race-neutral reasons from the prosecutor regarding each strike challenged by the defendant pursuant to Batson, regardless of the language in La.Code Crim. Proc. art. 795(C) that ostensibly allows the district court to supply a race-neutral explanation for the prosecutor based on the voir dire examination.
Second, I disagree with the majority's rationale regarding the state's asserted race-neutral basis for peremptorily striking prospective juror Marilyn Sterling. The state exercised twelve peremptory strikes against African-American prospective jurors, and as to eight of these the trial court determined the defendant had made out a prima facie case of racial discrimination. In that context, the state exercised its strike on grounds Ms. Sterling was unmarried and had a seventeen-month-old baby to care for with no evidence of a support system other than her teenage son. The prosecutor was concerned that Ms. Sterling would be distracted by "worrying about a young infant." Defense counsel immediately pointed out that the prosecutor had expressed no such concern when he accepted on the panel James Covington, a married white male with a 13-day-old child. In fact, although Mr. Covington had not sought a hardship release from the court before voir dire examination, he was the sole support of his family, which also included an eight-year-old girl, and he had used all of his accrued vacation time when his wife had the baby. Because his company frowned on any additional time off, Mr. Covington had gone to work at 2:00 a.m. that morning before heading for court. Mr. Covington thus indicated that serving on the panel would pose a hardship but that he would serve if selected on the panel. It was defense counsel, not the state, who then challenged Mr. Covington for cause on grounds that his family life and needs would distract him. The state resisted the cause challenge on grounds that Mr. Covington had said he would do his duty if selected notwithstanding the distractions at home. The trial court ultimately denied the cause challenge and both sides then accepted Mr. Covington as a juror and he served to the end of trial.
While Rice v. Collins, 546 U.S. ___, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006), does counsel reviewing courts not to second-guess the trial judge's credibility determinations with respect to the prosecutor, it is difficult to square the prosecutor's concerns about the distractions in Ms. Sterling's life with his sanguine acceptance of Mr. Covington's assurances that he would do his duty as a juror if selected in the face of his ready acknowledgment of the distractions at home. The prosecutor had displayed similar sanguinity in the selection of Timothy Fox, a married white male who was "happy to be here" after caring *804 all weekend for his 15-month-old child. Mr. Fox's wife also worked and the prosecutor might have worried about his support system. However, the prosecutor did not ask Mr. Fox a single question about the potential of home life distractions. Instead, the defense initially challenged Mr. Fox for cause on grounds that the juror had considered the indictment some evidence that the defendant was guilty. Defense counsel then withdrew the cause challenge after further examination of Mr. Fox by the court indicated that the juror would fully accord the defendant his presumption of innocence. Mr. Fox was selected from the first panel of prospective jurors but was subsequently removed by a defense backstrike following examination of the second panel of prospective jurors.
The presence on the jury of Mr. Covington notably contrasts with the majority of the jurors on the panel (Michelli, Trahan, Mutrie, Cothern, Raborn, Baudoin, Ferguson, Hedrick, Lewis) who were old enough to have grown children of their own. However, two other jurors selected on the panel might have had concerns similar to Mr. Covington. Carolyn Cashio, a divorced white female, had a child seven years old and Amy Kirby, a working mother, had children eight and four years old, and a husband who also worked. The prosecutor might have wondered about the support systems for these jurors as well. However, as the court of appeal noted in its opinion, "the prosecutor did not inquire into the availability of childcare for any juror." State v. Elie, 04-1610, p. 9 (La. App. 1 Cir. 3/24/05), 899 So.2d 689, 696. In my view, the court of appeal therefore did have a basis for its observation that "[t]he prosecutor did not pursue any consistent trial-related strategy of striking jurors with the same or similar characteristics." Id. By contrast, in Collins, the prosecutor struck similarly situated panelists, regardless of race.
Accordingly, I disagree with the majority that the court of appeal erred in finding that the state's explanation with regard to this prospective juror revealed discriminatory intent. Therefore, I respectfully dissent.
KIMBALL, J. dissenting.
I believe the recent pronouncements by the United States Supreme Court on the Batson issue mandate reversal of defendant's conviction and sentence on equal protection grounds. Consequently, I dissent from the majority's reversal of the court of appeal's judgment.
The trial court's statements after defendant raised the Batson challenges make it clear that it found defendant established a prima facie case of racial discrimination and, thereafter, the burden shifted to the prosecutor to present race-neutral explanations for the strikes. As recognized by the majority, Johnson v. California, 545 U.S. 162, ___, 125 S.Ct. 2410, 2418, 162 L.Ed.2d 129 (2005), counsels that it is the actual reason the prosecutor himself chose to strike a potential juror, and not the speculation of the courts, that is a critical component of the Batson analysis. Furthermore, Miller-El v. Dretke, 545 U.S. 231, ___, 125 S.Ct. 2317, 2332, 162 L.Ed.2d 196 (2005), makes it clear that:
when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A Batson challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.
*805 In my view, these principles demonstrate that the trial court cannot "assist" the prosecutor by eliminating Batson's requirement for the articulation of race-neutral reasons once a prima facie case has been made even when it believes the reasons are "obvious." It is up to the prosecutor to state the actual reasons he or she struck a particular potential juror, and courts cannot supply even "obvious" reasons. See Miller-El, 545 U.S. at ___, 125 S.Ct. at 2324 ("Although there may be `any number of bases on which a prosecutor reasonably might believe that it is desirable to strike a juror who is not excusable for cause . . . ., the prosecutor must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenge.'" (quoting Batson v. Kentucky, 476 U.S. 79, 98 n. 20, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986))). The majority attempts to circumvent these constitutionally-based requirements by citing La.C.Cr.P. art. 795(C), which provides that the trial court may demand a racially neutral reason for the exercise of the challenge when defendant has made a prima facie case for discrimination "unless the court is satisfied that such reason is apparent from the voir dire examination of the juror;" however, the constitutional demands clearly prevail over the statutory framework.
Because I believe the trial court was required to elicit race-neutral reasons from the prosecutor regarding each Batson-challenged strike once it determined defendant had made a prima facie case of racial discrimination, it is my opinion that the trial court erred and defendant's conviction and sentence should be reversed.
NOTES
[1] The State also raised a Batson challenge based on the defense's striking of 11 white jurors. Elie, 899 So.2d at 693. After the defense provided race-neutral reasons for the challenged jurors, the trial court denied the State's Batson objection.
[2] The appellate court resolved this error in the State's favor. The defendant did not file a writ application with this Court, alleging any error of the lower courts on this issue. Therefore, the correctness of that ruling is not before us.
[3] Even though the appellate court was not required to reach the discovery issue, it commented further on this question "in the interest of justice." Elie, 899 So.2d at 696.
[4] LA.CODE CRIM. PROC. ANN. art. 795 provides, in pertinent part:

C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
D. The court shall allow to stand each peremptory challenge exercised for a racially neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
[5] The record shows the State initially challenged both Tyler and Cage for cause. After the trial judge and the attorneys further examined and probed these two jurors, the trial judge ultimately denied the State's cause challenges with regard to both of them.
[6] Another African-American, Leandrew Bell, was also struck from the jury after both the State and the defendant initially accepted him. After jury selection had ended on the first day of examination, the State, acting on a hunch, checked its office files and discovered Bell had a pending felony charge against him. Although the trial judge had generally advised the jury venire as to juror qualifications in Louisiana, Bell had not revealed the felony charge pending against him. On the following morning, the State informed the trial judge and defense counsel of this fact. After a sidebar conference, the trial judge removed Bell from the panel for cause. See LA.CODE CRIM. PROC. ANN. art. 401(A)(5) (disqualification based upon an indictment for a felony offense).
[7] The State further observed Ms. Jordan's weight prevented her from fitting in the seat of the chair in the juror box. The State worried Ms. Jordan's discomfort would prevent her from serving on a three-day trial. Later, the trial judge mirrored the State's concern. Although Ms. Jordan's nursing background provided a race-neutral reason for the State's exercise of its peremptory exception, we would be remiss if we did not comment further on this juror's experience in the halls of justice.

A court possesses inherently all powers necessary for the exercise of its jurisdiction. LA.CODE CRIM. PROC. ANN. art. 17. Mindful of that precept, we call attention to District Court Rules, Rule 6.4 that provides, "The district courts, family and domestic relations courts and juvenile courts should comply with the District Court Standards adopted as Section 10 of Part G, General Administrative Rules, Supreme Court of Louisiana." Particularly applicable are the following standards:
Standard 1.1 Public Proceedings
The court conducts openly its judicial proceedings that are public by law or custom.
Standard 1.2 Safety, Accessibility, and Convenience
The court encourages responsible parties to make court facilities safe, accessible and convenient.
Standard 1.3 Effective Participation
All who appear before the court are given reasonable opportunities to participate effectively without undue hardship or inconvenience.
Standard 1.4 Courtesy, Responsiveness, and Respect
Judges and other trial court personnel are courteous and responsive to the public and accord respect to all with whom they come into contact.
Jury duty is not only a civic responsibility and an obligation of all qualified citizens, it is also a constitutional right of citizens the United States Supreme Court has recognized. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 136 (1991). Although it has been held the equal protection analysis articulated in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), does not apply to prohibit peremptory strikes based on obesity, United States v. Santiago-Martinez, 58 F.3d 422 (9th Cir.1995), courts should be mindful of their duty to make justice accessible to litigants and to the citizens called to render justice.
[8] The Coroner opined that the path of the bullet was important because of the dispute between the State's eyewitnesses who claimed the victim had been sitting down in the car when the defendant opened fire from outside the vehicle, and the defendant who testified the victim had been standing at the back of the car with his own gun and fired from that position, prompting the defendant to flee for cover and return fire. Ultimately, the defendant had no response for the State's question, based on the autopsy results reflecting the Coroner's opinion how the bullet he fired could have traveled downward into the victim's shoulder if the victim, who was approximately six feet three inches tall, had been standing outside the car when the defendant, who was almost six inches shorter, fired his gun. "I can't answer that question," defendant conceded, "I'm not a doctor or anything."
[9] LA.CODE CRIM. PROC. ANN. art. 921 provides, "A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."