MARVIN, Chief Judge.
Finding the evidence legally insufficient to convict a building contractor of issuing a worthless check, we reverse the conviction and discharge the defendant. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); LRS 15:438.
The crime of issuing worthless checks, LRS 14:71, includes two elements which relate to the issuer’s state of mind, the “intent to defraud,” and “knowing at the time of issuing that the offender has not sufficient credit with the bank ... for the payment of such check ... in full upon its presentation.”
The issuer’s failure to pay the check within 10 days after notice of its nonpayment has been given or mailed to the issuer is “presumptive evidence of his intent to defraud.” § 71A(2). The presumption, however, is not absolute. State v. Lindsey, 491 So.2d 371 (La.1986). The presumption does not relieve the State of its burden of proving beyond a reasonable doubt, the “intent” element, which is subject to the presumption, and the “knowledge” element, which is not subject to the presumption. LRS 15:271.
FACTS
In the summer of 1989, defendant contracted with Mr. and Mrs. Morgan to build them a home near Jonesboro for $43,600. Both parties used the same bank in Jones-boro. In accordance with their contract the Morgans paid defendant periodically as the work progressed. After paying defendant more than $35,000 from August 10 through October 9, Mrs. Morgan gave defendant her October 13 check for $6,000 on Saturday, October 14, 1989, as a periodic payment under the contract.
Defendant testified that he deposited the $6,000 check for credit to his checking account on October 14. The bank president explained that any check deposited after 2:00 p.m. on a Friday is not credited to the depositor’s checking account until the following Monday.
The $6,000 deposit, whether made on Saturday morning as defendant testified or on Monday morning as the jury could have inferred from Mrs. Morgan’s testimony, in any event, was credited to defendant’s account on Monday, October 16.
When, or shortly after, Mrs. Morgan gave defendant the $6,000 check, defendant gave her his October 14 check for $620. The contract obligated defendant to provide and install $500 worth of lighting fixtures and $120 worth of ceiling fans in the home. Defendant apparently agreed to allow the Morgans to select and purchase the fixtures and fans to be installed by him in their home, giving Mrs. Morgan his check for the $620 amount which he says was “allotted” for that purpose in the contract. No discussion occurred between Mrs. Morgan and defendant on or before October 14 about either check not being honored or paid when presented or deposited at the bank.
On Monday, October 16, before the bank credited the $6,000 Morgan check which defendant had earlier deposited, defendant’s account was overdrawn about $3,800. After the $6,000 deposit was credited, defendant’s account showed a credit balance of $2,164.11 on October 16.
On October 17, the bank debited defendant’s checking account, paying a $2,160 *1214 check to McKnight’s Cabinets, the cabinet supplier for the Morgan home. This banking transaction left defendant’s checking account on Tuesday, October 17, with a credit balance of only $4.11.
On Thursday, October 19, Mrs. Morgan attempted to cash defendant’s $620 check first at a credit union office and then at the bank on which the check was drawn. A bank employee told Mrs. Morgan the account had insufficient funds to cover the check but apparently did not stamp the check “Insufficient Funds” until Mrs. Morgan returned a month or so later, after she had contacted the district attorney about the check and again attempted to cash the check at the bank.
The bank, however, did honor defendant’s $752 overdraft check to another on October 23 and defendant’s $100 overdraft check to another on November 6, 1989. We reproduce defendant’s bank statement through November 10, 1989, which shows overdrafts before and after defendant issued the $620 check on October 14:
[[Image here]]
The bank president testified that he authorized payment of overdrafts written by defendant on the Morgan job, explaining that “most” of the $3,800 in overdrafts were written by defendant to pay for costs incurred on the Morgan job. The president said the bank continued to pay overdrafts for defendant on the Morgan job ($752 on October 23 “for labor,” and $100 on November 6, 1989). He explained that if defendant’s $620 check had come to the bank “during the month of October, through normal banking channels,” the check “probably” would have been paid as were other overdrafts that were written to depositors who deposited them for credit to their checking accounts, as in the case of the $752 overdraft that was honored on October 23 and the $100 overdraft that was honored on November 6.
The bank president further explained that he did not cease authorizing payment of defendant’s overdrafts on the Morgan job until he learned of the dispute between defendant and the Morgans around the time defendant’s $100 overdraft was honored on November 6.
The bank president said he had never seen the $620 check before trial and that he had never told defendant the bank would not honor that check. The bank cashier who testified said that it was “possible” that the $620 check would have been honored if the Morgans had deposited it to their account. She could “not say” that defendant would have to have known on October 14 that the $620 check would not be paid when presented.
*1215 Defendant testified that the Morgans had paid him $42,386 and owed him over $8,000 for “overages” or extra work and materials, which they had been disputing, he says, since mid-August, 1989. Mrs. Morgan said their disputes about overages arose shortly after October 14. Defendant said he had no intent to defraud the Morgans out of anything when he wrote the $620 check and that he did not remember whether he knew he was overdrawn some $3,800 on October 13, but “felt” the $620 check would be paid by the bank if the Morgans had deposited it or had endorsed it to the “lighting company.”
CONCLUSION
We shall assume, but not find, in general accord with the State’s argument, that the $620 was given to Mrs. Morgan “in exchange for [something of value,” as LRS 14:71 requires, notwithstanding her testimony that she would have given defendant the $6,000 check “whether or not” defendant gave her the $620 check and notwithstanding defendant’s testimony that he was not obligated under the contract to pay the Morgans any money. The more critical issue is the legal sufficiency of the evidence to prove, by inference and beyond a reasonable doubt, the intent and the knowledge of the defendant when he issued the $620 check on October 14. LRS 15:438; Jackson v. Virginia, supra.
We reverse the conviction because the evidence, even when viewed in the light that most favorably supports the jury verdict, of defendant’s experience with the bank in October 1989 makes unreasonable the inference that defendant, on Saturday, October 14, knew that he did not have “sufficient credit with the bank” for the bank to honor the $620 check when it was presented, whether by the Morgans or by one to whom they may have negotiated the check and whether the presentment was for payment in cash or for credit when deposited. For the same reason, the conclusion that defendant had the intent to defraud the Morgans on October 14 is unreasonable.
LRS 14:71, when construed under LRS 14:3 standards, is not couched exclusively in terms of an offender’s knowledge of the specific monetary credit balance of the offender’s checking account, but in terms of his sufficient credit with the bank. Sufficient credit with a bank is broader than a specific monetary balance in a checking or other bank account.
In order to convict, the circumstantial evidence must exclude every reasonable hypothesis of innocence. LRS 15:438. The assumption that the defendant knew his bank account was overdrawn more than $3,800 when he wrote the $620 check, avails, not the State, but the defendant.
In the light of the testimony of the bank employees and where a bank has consistently honored overdrafts totaling over $3,800 for a defendant who issues a $620 check on a Saturday and who deposits $6,000 in his checking account on or before the following Monday, the defendant’s belief on Saturday that the $620 check that he wrote will be honored, in the absence of other circumstances, must be found to be a reasonable belief.
The test for circumstantial evidence being legally sufficient to support a conviction beyond a reasonable doubt, LRS 15:271, 15:438, whether expressed in terms of doubt or of hypothesis, is the reasonableness of the ultimate conclusion on the facts and the inferences which may be drawn from those facts. State v. McFadden, 476 So.2d 413 (La.App. 2d Cir.1985), writ denied. A rational trier of fact could not draw the conclusion from the circumstances of this record that defendant had both the intent to defraud the Morgans and the knowledge that he did not have “sufficient credit with the bank” for payment of the $620 check when he issued the check to the Morgans on October 14, 1989. Jackson v. Virginia, supra. See and compare State v. Jones, 400 So.2d 658 (La.1981).
DECREE
The conviction is reversed and defendant is discharged.