952 So.2d 53 (2006)
STATE of Louisiana
v.
Joyce Marie HANDON.
No. 2006 KA 0131.
Court of Appeal of Louisiana, First Circuit.
December 28, 2006.
*55 Joseph L. Waitz, Jr., District Attorney, Ellen D. Doskey, Assistant District Attorney, Houma, for State of Louisiana.
Bertha M. Hillman, Louisiana Appellate Project, Thibodaux, for Defendant-Appellant Joyce Marie Handon.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
PARRO, J.
The defendant, Joyce Marie Handon, was charged by bill of information with one count of aggravated battery, a violation of LSA-R.S. 14:34, and pled not guilty. Following a jury trial, she was found guilty as charged. She moved for a new trial and for a post-verdict judgment of acquittal, but the motions were denied. She was sentenced to six years of imprisonment at hard labor, to run concurrently with any other sentence she might be required to serve for any previous conviction. She moved for reconsideration of sentence, but the motion was denied. She now appeals, designating two assignments of error. We affirm the conviction and sentence.

FACTS
On November 19, 2004, at approximately 2:15 a.m., the victim, Pamela Rogers, was seated at a table with Cheryl Klingman, Rita Duplantis, and David Authement at The Pit Stop restaurant in Houma. Klingman was the bartender and manager of Kathy Shaw's Lounge, and the group had been at that lounge together before going to The Pit Stop.
The defendant was also seated at a table at The Pit Stop. According to the victim, after ordering their food, she and her group sat at their table talking. The defendant approached the table and spoke to Duplantis. Thereafter, Duplantis began *56 having a conversation with Klingman, and Klingman recognized the defendant as someone with whom she had had a previous problem. The defendant started shouting at Klingman, and Klingman stood up and told her she did not want to fight her, and she was not worth fighting and going to jail for. The defendant then returned to her table.
Thereafter, the defendant screamed and cursed Klingman from across the restaurant. Subsequently, the defendant again approached the victim and her group's table, cursing at Klingman, and grabbing a five-ounce bottle of Tabasco sauce as she approached. The victim stood up and grabbed the defendant's arm to block her from reaching the table. The defendant struck the victim in the face with the Tabasco bottle. The bottle shattered on the victim's right eye, sliced her face in two different places, broke one of her teeth, blackened her right eye, almost closed her left eye due to irritation from the Tabasco sauce, and numbed her lip due to nerve damage. The wounds required approximately 28 to 30 stitches to close. Following the incident, the defendant had to be restrained by Authement and Jason Guidry, a man with whom the defendant had been sitting. The defendant continued to shout vulgarities across the restaurant.
The defense presented testimony that the defendant had a "knot" on her head and bruises on her legs following the incident. The defense also presented testimony from Guidry. According to Guidry, he and the defendant had been together at Kathy Shaw's Lounge prior to November 19, 2004. While he was in the bathroom, a man apologized to him for grabbing the defendant under her skirt. Thereafter, Duplantis or Klingman followed Guidry and the defendant around the lounge, staring at them.
Furthermore, according to Guidry, on November 19, 2004, someone from the victim's table called the defendant over to the table in a friendly manner. Thereafter, chairs began flying backwards, and people began standing up and shouting at the victim's table. The defendant fell backwards after being pushed or hit. Guidry claimed the defendant hit the victim with the Tabasco bottle on the back of her head.

BATSON
In assignment of error number one, the defendant argues the trial court erred in denying the Batson challenges to the state's use of peremptory challenges to strike prospective jurors, Ethyl Swan, Charles Phillips, and Natalie K. Antoine.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court adopted the following three-step analysis to determine whether or not the constitutional rights of a defendant or prospective jurors had been infringed by impermissible discriminatory practices. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. State v. Rodriguez, 01-2182 (La. App. 1st Cir.6/21/02), 822 So.2d 121, 127, writ denied, 02-2049 (La.2/14/03), 836 So.2d 131.
Louisiana Code of Criminal Procedure article 795, in pertinent part, provides:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense *57 has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror.[1] Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror. [Footnote added.]
D. The court shall allow to stand each peremptory challenge exercised for a racially neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
The ultimate burden of persuasion remains on the party raising the challenge to prove purposeful discrimination. Johnson v. California, 545 U.S. 162, 170-71, 125 S.Ct. 2410, 2417, 162 L.Ed.2d 129 (2005); State v. Elie, 05-1569 (La.7/10/06), 936 So.2d 791, 796. A defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. Johnson, 545 U.S. at 170, 125 S.Ct. at 2417; Elie, 936 So.2d at 796.
In order to make a prima facie showing that the prosecutor has exercised peremptory challenges on an impermissible basis, the defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent. Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor during voir dire which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination. Rodriguez, 822 So.2d at 128.
No formula exists for determining whether the defense has established a prima facie case of purposeful racial discrimination. A trial judge may take into account not only whether a pattern of strikes against African-American venire-persons has emerged during voir dire but also whether the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. Rodriguez, 822 So.2d at 128.
For a Batson challenge to succeed, it is not enough that a racially discriminatory result be evidenced; rather, that result must ultimately be traced to a racially discriminatory purpose. Thus, the sole focus *58 of the Batson inquiry is upon the intent of the prosecutor at the time he exercised his peremptory strikes. Rodriguez, 822 So.2d at 128.
If the defendant is unable to make out a prima facie case of racial discrimination, then the Batson challenge fails and it is not necessary for the prosecutor to articulate "race-neutral" reasons for his strikes. State v. Allen, 03-2418 (La.6/29/05), 913 So.2d 788, 798, cert. denied, ___ U.S. ___, 126 S.Ct. 2023, 164 L.Ed.2d 787 (2006).
The state, in presenting race-neutral reasons for its excusal of prospective jurors, need not present an explanation that is persuasive, or even plausible; unless a discriminatory intent is inherent in the state's explanation after review of the entire record, the reason offered will be deemed race neutral. A reviewing court owes the trial court's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Elie, 936 So.2d at 801.
In the instant case, the defense first raised a Batson objection following the state's peremptory challenge to the first prospective alternate juror, Natalie Antoine. Defense counsel alleged that Antoine was the third minority person on the two panels and that the state had raised peremptory challenges to all three prospective jurors. The court asked the state to set forth a racially neutral reason for its challenge against Antoine. The state indicated Antoine was related to Michael Nixon, who was facing charges for the same type of crime at issue in this case. Further, the state set forth that Antoine was friends with the brother of Tige Wesley, who was facing trial for murder. Additionally, the state argued there had been no proof that Antoine was a minority or that any member of the first panel on whom peremptory challenges were exercised by the state was a minority individual. The defense conceded it had not questioned the prospective jurors concerning their race, but argued the court could take judicial notice that Ethel Swan, Charles Phillips, and Antoine were challenged peremptorily by the state and were minorities. The defense also objected to the removal of Phillips and Swan. The court noted the defense objection, but stated the members of the first panel of prospective jurors (including Swan and Phillips) had left the courthouse. The court accepted the state's explanation for its peremptory challenge against Antoine "regardless of what her race might be[,]" and found the explanation racially neutral. The defense objected to the court's ruling.
There was no abuse of discretion in the denial of the Batson challenges against prospective jurors Swan and Antoine. In regard to the challenge against the state's use of a peremptory challenge against prospective juror Swan, the defense failed to make a prima facie showing that the prosecutor had exercised the peremptory challenge on the basis of race. The defense failed to produce evidence sufficient to permit the trial judge to draw an inference that discrimination had occurred. The defense did not even establish the race of Swan.
In regard to the Batson challenge against the state's use of a peremptory challenge against prospective juror Antoine, whether or not the defense established a prima facie case of discrimination is moot. The issue of whether the defense established a prima facie case of discrimination is moot once the prosecutor has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination. State v. Snyder, 98-1078 (La.9/6/06), 942 So.2d 484, 490 n. 9. *59 Nevertheless, a review of the state's explanations for the peremptory challenge against prospective juror Antoine reveals no discriminatory intent. See Elie, 936 So.2d at 801. Further, the prosecutor's demeanor was evaluated by the trial court which found no discriminatory intent. The explanations were reasonable and the proffered rationale had some basis in accepted trial strategy. See Snyder, 942 So.2d at 494. The state indicated Antoine was related to Michael Nixon, who was facing charges for the same type of crime at issue in this case. Also, the state set forth that Antoine was friends with the brother of Tige Wesley, who was facing trial for murder. Indeed, during voir dire, Antoine indicated her nephew, Michael Nixon, had been arrested for possession of crack cocaine and aggravated battery, and the aggravated battery charge was currently pending. Antoine claimed she would not hold Nixon's arrests and his conviction for possession of cocaine against the state. Antoine also indicated she knew Tige Wesley, and Wesley's brother was awaiting trial for murder. Antoine claimed that Wesley's brother's arrest would not give her a problem with law enforcement personnel called as witnesses.
Moreover, a review of the entire voir dire transcript fails to reveal any evidence that the use of peremptory strikes by the state in this matter was motivated by impermissible considerations.
This assignment of error is without merit.

MISTRIAL
In assignment of error number two, the defendant contends the trial court erred in denying the defendant's motion for a mistrial. In particular, the defendant argues the state failed to fully and fairly comply with open-file discovery and its failure to timely disclose the issuance of subpoenas to Kelly Billiot and Adam Kelly misled the defense and constituted a legal defect in the proceedings, which makes the verdict reversible as a matter of law.
Louisiana Code of Criminal Procedure article 729.5 prescribes sanctions for failure to honor a discovery right, leaving in the trial judge's discretion the decision of whether to order a mistrial or enter any such other order as may be appropriate. As is pertinent here, LSA-C.Cr.P. art. 775 provides that a mistrial shall be ordered when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. However, a mistrial is a drastic remedy which should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. Determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for a mistrial will not be disturbed on appeal without abuse of that discretion. State v. Berry, 95-1610 (La.App. 1st Cir.11/8/96), 684 So.2d 439, 449, writ denied, 97-0278 (La.10/10/97), 703 So.2d 603.
Except as specifically provided by statute, a defendant in Louisiana is not entitled to statements by witnesses made to the district attorney or to agents of the state. LSA-C.Cr.P. art. 723. However, the defendant may not be denied exculpatory statements made by a witness other than the defendant, provided the statement is material and relevant to the issue of guilt or punishment. LSA-C.Cr.P. art. 718. Berry, 684 So.2d at 451-52.
A defendant generally does not have a right to the names and addresses of state witnesses. State v. Bennett, 591 So.2d 1193, 1197 (La.App. 1st Cir.1991), writ denied, 594 So.2d 1315 (La.1992). The discovery of the information is not *60 prohibited, however, where there has been a determination that there exists peculiar and distinctive reasons why fundamental fairness dictates discovery. State v. Ondek, 584 So.2d 282, 294 (La.App. 1st Cir.), writ denied, 586 So.2d 539 (La.1991).
During opening argument, the state indicated it would present testimony from Billiot and Kelly. Thereafter, the defense moved for a mistrial, arguing neither Billiot nor Kelly had been mentioned in the state's file provided to the defense and neither witness was mentioned on the subpoena list. The state responded it did not have a statement from either Billiot or Kelly and only learned of the witnesses approximately ten days earlier. The state further indicated it had only spoken to one of the witnesses on the previous day and the other witness on that day. The state added, contrary to the assertion of the defense, the record did contain a request that subpoenas be issued to Billiot and Kelly.[2] The state indicated neither Billiot nor Kelly had advised it of any exculpatory evidence. The court denied the motion for mistrial, holding that, unless the information was exculpatory, the state was not obligated, as a matter of constitutional law, to interview witnesses and then tell the defense what it had learned.
At the beginning of the next day of trial, the defense renewed its motion for a mistrial on the basis of non-disclosure of the statements of Billiot and Kelly. The trial court again denied the motion. The court indicated it had researched the issue and concluded the state had only a limited responsibility to provide discovery under the discovery articles of the Louisiana Code of Criminal Procedure and constitutional law and the state had not violated any duty owed to the defense under the constitution or the Code of Criminal Procedure.
There was no abuse of discretion in the trial court's denial of the motion for mistrial. The defense failed to establish any peculiar or distinctive reason why fundamental fairness dictated discovery of the names of Billiot and Kelly. Further, the defense does not claim, nor does the record indicate, that the defense was denied exculpatory statements made by these witnesses.
This assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The discretion afforded to a trial court by LSA-C.Cr.P. art. 795(C) to overrule a Batson objection, following the making of a prima facie case supporting the objection, without requiring the state to set forth its reasons for a challenged peremptory strike may be at odds with Miller-El v. Dretke, 545 U.S. 231, 252, 125 S.Ct. 2317, 2332, 162 L.Ed.2d 196 (2005). State v. Snyder, 98-1078 (La.9/6/06), 942 So.2d 484, 490 n. 9, 2006 WL 2549003.
[2] The state indicated defense counsel had not conducted open file discovery since shortly before the defendant's arraignment. The defense did not deny the state's claim, but argued the state had advised it that, if anything new was added to the file, the defense would either be provided with the item or advised of its addition to the file.