WILLIAMS, J.
*342 The defendant, Bruce Wayne Duffy, was charged by bill of information with issuing worthless checks in an amount of $1,500 or more, a violation of La. R.S. 14:71. After a jury trial, the defendant was found guilty as charged. Defendant was sentenced to serve 4 years at hard labor, suspended, and was placed on supervised probation for three years, with conditions including the payment of a $200 fine and restitution. Defendant appeals his conviction. For the following reasons, we affirm.
FACTS
The record shows that in 2010 defendant received money from an inheritance and opened a savings and checking account with Pelican State Credit Union ("Pelican"). Defendant then obtained a line of credit at Sam's Town Casino in the amount of $20,000 that was payable from his Pelican checking account. The line of credit allowed defendant to sign markers to gamble.
On February 22, 2011, defendant signed three markers for a total of $20,000. On that date, defendant's checking account contained $10,418. When defendant did not pay the markers within 30 days, the casino submitted the markers to Pelican for payment. The markers were returned unpaid and the casino then sent a demand letter warning defendant that if the debt was not paid, the matter would be sent to the district attorney's office for prosecution.
Defendant was arrested and charged with issuing worthless checks. Following a jury trial, defendant was found guilty as charged. The trial court denied the defendant's motions for new trial and for post-verdict judgment of acquittal. Defendant was sentenced to serve 4 years at hard labor, suspended, with three years of supervised probation. Defendant was ordered to pay a $200 fine and restitution of $20,000 to Sam's Town Casino. The defendant's motion to reconsider sentence was denied. This appeal followed.
DISCUSSION
The defendant contends the evidence presented was insufficient to support the conviction of issuing worthless checks. Defendant argues the state failed to prove that he had the intent to defraud the casino at the time he signed the markers.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Carter , 42,894 (La. App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied , 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 2005-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 2009-0310 (La. 11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient *343 for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Casaday , 49,679 (La. App. 2 Cir. 2/27/15), 162 So.3d 578, writ denied , 2015-0607 (La. 2/5/16), 186 So.3d 1162.
Issuing worthless checks is the issuing, in exchange for anything of value, with intent to defraud, of any check, draft or order for the payment of money upon any bank, knowing at the time of issuing that the offender has not sufficient credit with the bank for the payment of such check, draft or order in full upon its presentation. La. R.S. 14:71(A)(1). The offender's failure to pay a check, draft or order within 10 days after notice of its nonpayment has been sent by certified mail to the issuer shall be presumptive evidence of his intent to defraud. La. R.S. 14:71(A)(2).
Thus, under La. R.S. 14:71, to obtain a conviction for issuing a worthless check, the state is required to prove beyond a reasonable doubt that: (1) defendant issued, in exchange for anything of value, (2) a check, draft or order for the payment of money upon any bank or other depository; (3) knowing at the time of the issuing that the account on which the check is drawn has insufficient funds with the financial institution to have the instrument paid in full on presentation; and (4) the instrument was issued with intent to defraud. State v. Davis , 48,777 (La. App. 2 Cir. 2/26/14), 134 So.3d 1257, writ denied , 2014-0483 (La. 10/3/14), 149 So.3d 793.
The proper inquiry under La. R.S. 14:71(A) is whether a defendant knew that he had not sufficient credit with the bank, not whether his actual monetary balance was sufficient to cover a check, draft or order for payment issued by him. State v. Davis, supra ; State v. Bond , 584 So.2d 1212 (La. App. 2 Cir. 1991).
Intent is a question of fact to be decided by the trier of fact. It need not be proven as a fact, but may be inferred from the circumstances. State v. Washington , 29,784 (La. App. 2 Cir. 9/26/97), 700 So.2d 1068.
Subparagraph A(2) of La. R.S. 14:71 creates a statutory rebuttable presumption of the issuer's intent to defraud when the offender fails to pay the amount of the worthless check within 10 days of the receipt of notification by certified mail of nonpayment of the check, sent to the address shown on the check or the address shown in the records of the bank on which the check was drawn. State v. Mosby , 42,519 (La. App. 2 Cir. 5/18/07), 956 So.2d 843 ; Washington, supra. The presumption, however, is not absolute. The presumption does not relieve the state of its burden of proving beyond a reasonable doubt the "intent" element, which is subject to the presumption, and the "knowledge" element, which is not subject to the presumption. State v. Davis, supra ; State v. Bond, supra.
At trial in the present case, Mark Breaux, the credit manager at Sam's Town Casino, testified that after getting credit approval from the casino, a person can go to the gaming table and request a marker; the person then signs the marker and is given chips to gamble. Breaux stated that markers are similar to a signature loan or an IOU, and are styled as checks. He explained that if the marker is not paid *344 within 30 days, the casino will present the marker for payment from the person's bank account, which was provided during the application process. Breaux testified that in June 2010, defendant applied for credit with Sam's Town and the casino then reviewed his credit, banking, and gaming reports. Breaux stated that defendant was approved for a $20,000 line of credit and on several subsequent occasions he utilized the line of credit to gamble and paid off the markers.
Breaux testified that on February 22, 2011, defendant signed three markers, in the amounts of $5,000, $5,000, and $10,000. Breaux stated the markers were not paid within 30 days and were submitted for payment from defendant's bank account on March 24, 2011. Breaux testified the markers were returned unpaid because the defendant's bank account had been closed. Breaux stated he then sent a certified letter, dated May 24, 2011, notifying defendant that he had 10 days to pay the markers totaling $20,000 or the matter would be referred to the Caddo Parish District Attorney's Office for prosecution. Breaux testified that he did not receive any communication from defendant regarding payment or his ability to pay, and the matter was forwarded to the district attorney.
Shamita Demery, the member service representative at Pelican State Credit Union, testified regarding the amount of money in defendant's checking and savings accounts before and after the markers were signed. Demery stated that on February 22, 2011, the date defendant signed the markers at Sam's Town Casino, he had $10,418.37 in his checking account. Demery testified that on February 28, 2011, defendant withdrew all of the money from his checking account ($9,879.10), leaving a zero balance.
The defendant testified that after receiving an inheritance in 2010, he gambled often using markers and he repaid the markers. He admitted that on February 22, 2011, he signed three markers at Sam's Town Casino for $20,000 and lost the money gambling. Defendant stated that when he went to the bank on February 28, 2011, he withdrew all of his money. Defendant testified that he knew he had to pay the money back, and that he always intended on repaying Sam's Town, but he could not because he ran out of money. He stated that he never contacted Sam's Town to set up a payment agreement. Defendant claimed that he was forced to file for bankruptcy because of his casino debts and medical bills. He stated that none of his creditors appeared at the creditors meeting, and his debts were discharged.
The defense introduced documents from the federal bankruptcy proceedings into evidence. The documents show that defendant filed for bankruptcy on March 18, 2011, and was granted a discharge on July 11, 2011.
In his brief, defense counsel contends the evidence is insufficient to prove that defendant possessed the requisite intent to defraud the casino at the time he signed the markers. As to the issue of intent, the evidence was sufficient to establish the rebuttable presumption provided for in La. R.S. 14:71(A)(2). Breaux testified that he sent a certified letter on May 24, 2011, notifying defendant that he had 10 days to pay the markers. Defendant signed the green return card, indicating that he received the letter, but never paid the markers. This constitutes presumptive evidence of defendant's intent to defraud the casino. This presumption was further supported by evidence that on February 22, 2011, the date he signed the markers totaling $20,000, defendant's account contained only $10,418.37.
Defendant failed to rebut the presumption of his intent to defraud the casino. At *345 trial, the defendant mainly relied on his past history of paying the casino markers and never having an NSF check. However, the situation in this case can be distinguished from that of Davis , in which this court reversed a conviction of issuing worthless checks for failure to pay markers, finding the state did not prove intent to defraud where Davis remained in contact with the credit department of the casino, attempted to satisfy the markers by selling assets, and made a partial payment on the debt. Here, the jury reasonably rejected defendant's testimony that he had intended to repay the casino based upon the evidence that a short time after he signed the markers, defendant withdrew the remaining money from his checking account. Moreover, he failed to contact the casino to make arrangements for payment of the debt after receiving notice, and then filed for bankruptcy.
When considered in a light most favorable to the prosecution, the evidence was sufficient for the jury to reasonably conclude beyond a reasonable doubt that defendant was guilty of issuing worthless checks. This assignment of error is without merit.
In his pro se brief, the defendant contends the evidence was insufficient to support his conviction. He argues that there was no evidence of intent to defraud because all allegations regarding his intent to defraud the casino should have been presented at the bankruptcy court, but the casino failed to appear at the creditor hearing to object to the discharge of his debt. Defendant also appears to argue that the trial court did not have authority to order restitution of his debt that was discharged in bankruptcy.
The defendant's arguments lack merit. The instant criminal prosecution is separate and distinct from the bankruptcy proceedings. The fact that defendant's debt has been discharged in bankruptcy proceedings does not preclude the institution of state criminal proceedings against him, as criminal prosecutions are exempt from the automatic stay imposed upon the filing of a bankruptcy petition. 11 U.S.C. § 362(b)(1) (the filing of a bankruptcy petition does not operate as a stay "of the commencement or continuation of a criminal action or proceeding against the debtor"); Gatheright v. Clark , 680 Fed. Appx. 297 (5th Cir. 2017) ; United States v. Carson , 669 F.2d 216 (5th Cir. 1982) (a bankruptcy discharge does not limit a district court's power to order restitution as a condition of probation); In re Gruntz , 202 F.3d 1074 (9th Cir. 2000) (noting that the plain language of 11 U.S.C. § 362 makes no exception for prosecutorial motive, and that even criminal prosecutions with the underlying purpose of debt collection are exempt from the automatic stay). Further, under La. R.S. 14:71(G), the trial court was required to order defendant to pay $20,000 in restitution to Sam's Town Casino as part of his sentence.
In his brief, defendant states four additional pro se assignments of error: the state failed to provide him with adequate representation; the trial court failed to conduct a Faretta colloquy before trial regarding defendant's representation of himself; trial counsel failed to raise defendant's prior request to represent himself as grounds for a new trial; and trial counsel failed to include the trial proceedings containing defendant's representation request as part of the appellate record.
Pursuant to U.R.C.A. Rule 2-12.4, all assignments of error and issues for review must be briefed, and the appellate court may consider as abandoned any assignment of error or issue for review which has not been briefed. A mere statement of an assignment of error in a brief does not constitute briefing of the assignment.
*346 State v. Free , 48,260 (La. App. 2 Cir. 11/20/13), 127 So.3d 956, writs denied , 2013-2978 (La. 5/30/14), 140 So.3d 1174, 2014-0039 (La. 9/19/14), 148 So.3d 944.
We note that defendant's pro se brief merely lists the above additional assignments and contains only conclusory allegations. Defendant fails to provide any factual references, arguments, or legal authority to support his claims. Because defendant failed to properly brief these assignments of error, these issues are deemed to be abandoned.
Nevertheless, even if considered, the assignments lack merit. As to defendant's alleged requests to represent himself, there is no indication in the record that he ever filed a motion requesting to represent himself in this case. At the hearing on December 7, 2016, at which the trial court denied defendant's post-trial motions, he made an oral motion to represent himself in a separate case. The trial court granted that motion.
Further, regarding the defendant's claim that the appellate record is not complete because it lacks "records" pertaining to his request to represent himself, we note that this court previously denied defendant's motion to supplement the appellate record. State v. Duffy , 51,734 (La. App. 2 Cir.8/9/17). Defendant had requested supplementation of the record to include transcripts from the proceedings of June 15, 2015 and July 11, 2016. According to the district court minutes, on June 15, 2015, the case was merely continued with no other proceedings occurring on that date. Additionally, that portion of the July 11, 2016 transcript that was not included in the appeal record is the voir dire of prospective jurors. This court denied defendant's motion because he failed to specify any errors which occurred at those hearings sufficient to justify supplementing the appellate record. To the extent that defendant alleges his trial counsel was ineffective, that issue may be raised in an application for post-conviction relief.
Based upon this record, the defendant's assignments of error lack merit. We have reviewed the record for error patent and found none.
CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
BEFORE WILLIAMS, MOORE, GARRETT, STEPHENS and GASKINS, JJ.
Rehearing denied.