NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 KA 1135

STATE OF LOUISIANA

VERSUS

DONOVAN DARVILLE

Judgment Rendered: __OCT 1 8 2021__

* * * * *

On Appeal from the
Twenty-Third Judicial District Court
In and for the Parish of Ascension
State of Louisiana
Trial Court No. 37,382

The Honorable Jason M. Verdigets, Judge Presiding

* * * * *

Ricky L. Babin
District Attorney
Donald D. Candell
Lindsey D. Manda
Assistant District Attorneys
Gonzales, Louisiana

Attorneys for Appellee
State of Louisiana


Lieu T. Vo Clark
Mandeville, Louisiana

Attorney for Defendant/Appellee
Donovan Darville


Donovan J. Darville
Donaldsonville, Louisiana

Pro Se

* * * * *

BEFORE: WHIPPLE, CJ., PENZATO, AND HESTER, JJ.

**PENZATO, J.**

The defendant, Donovan Darville, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1 (count 1), and possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1 (count 2). He pled not guilty and, following a jury trial, was found guilty as charged on both counts. The defendant filed a motion for new trial, arguing that his second degree murder conviction could not stand because it was based on an eleven-to-one jury verdict.[1] *See Ramos v. Louisiana,* __ U.S. __, 140 S.Ct. 1390, 1397, 206 L.Ed.2d 583 (2020). The trial court granted the motion for new trial and vacated only the defendant's conviction for second degree murder. For the conviction by unanimous verdict of possession of a firearm by a convicted felon, the trial court sentenced the defendant to twenty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant filed a motion to reconsider sentence, which was denied. The defendant now appeals, designating two counseled assignments of error and six pro se assignments of error. We affirm the conviction and sentence.

## FACTS

Evangelean Gaona, known as Angel, lived in a trailer in Prairieville, Ascension Parish, with Tessa Menier and Clarence Harvey. Angel and Clarence were romantically involved. Angel, at the same time, was also romantically involved with the defendant. The defendant and Clarence knew each other and, according to Angel, he and Clarence were close.

---

[1] One juror voted to convict the defendant of the responsive offense of manslaughter.

Shortly after the defendant first had a sexual encounter with Angel, Clarence and the defendant began arguing about the occurrence and continued to argue for about a week. On April 18, 2017, the defendant went to Angel's trailer to pick up some ammunition that he had left there. Shortly thereafter, Clarence pulled up in a car at the trailer. The defendant approached the vehicle and began yelling at Clarence. Clarence got out of the car, and he and the defendant began arguing. The defendant, who had a revolver handgun in his hand, accused Clarence of having a gun. Clarence insisted that he had no gun and walked away from the defendant. Clarence walked up the stairs of the trailer, apparently to go inside. The defendant shot Clarence in the back of the head, killing him. Clarence never had a weapon at any time before he was shot and killed.

The defendant got in the car with Jerald Wall, who had driven the defendant to the trailer. The defendant told Wall to drive, and they left the scene. Wall witnessed the shooting. According to Wall, who was driving, the defendant held the handgun on his lap. At some point, Wall pulled over, and the defendant began driving the car. The defendant drove to the Siegen Lane area in Baton Rouge and parked the car. Wall and the defendant got out the car and walked in different directions. The defendant was arrested a short time later in the Wal-Mart parking lot in Prairieville.

The defendant did not testify at trial.

## COUNSELED AND PRO SE ASSIGNMENTS OF ERROR NOS. 1 AND 2

In his first and second counseled and pro se assignments of error, the defendant argues, respectively, the trial court erred in denying the motion to reconsider sentence, and the maximum sentence is excessive.

The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive.

3

*State v. Sepulvado*, 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Livous*, 2018-0016 (La. App. 1st Cir. 9/24/18), 259 So.3d 1036, 1044, *writ denied*, 2018-1788 (La. 4/15/19), 267 So.3d 1130. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. *State v. Scott*, 2017-0209 (La. App. 1st Cir. 9/15/17), 228 So.3d 207, 211, *writ denied*, 2017-1743 (La. 8/31/18), 251 So.3d 410. Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of La. C.Cr.P. art. 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. *State v. Brown*, 2002-2231 (La. App. 1st Cir. 5/9/03), 849 So.2d 566, 569.

The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1. *State v. Lanclos*, 419 So.2d 475, 478 (La. 1982); *Scott*, 228 So.3d at 211. The trial judge should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. *State v. Jones*, 398 So.2d 1049, 1051-52 (La. 1981); *State v. Spikes*, 2017-0087 (La. App. 1st Cir. 9/15/17), 228 So.3d 201, 204-05. Even when the district court assigns no reasons, the sentence will be set aside on appeal and remanded for sentencing only if the record is inadequate or clearly indicates the

4

sentence is excessive. *State v. Manasco*, 2017-0133 (La. App. 1st Cir. 9/15/17), 2017 WL 4082286, at *2 (unpublished).

For his conviction, the trial court imposed the maximum sentence of twenty years at hard labor without benefits. The defendant argues that the trial court did not consider mitigating factors. Also, the defendant alleges, the trial court failed to order a pre-sentence investigation (PSI) report and failed to consider whether he was the worst type of offender. While a PSI report may be ordered by the court, it is not a right of the accused and is not mandatory. La. C.Cr.P. art. 875(A)(1); *Manasco*, 2017 WL 4082286, at *2 (*citing State v. Wimberly*, 414 So. 2d 666, 671 (La. 1982)). Such an investigation is an aid to the court and not a right of the accused. *State v. Rieckmann*, 2014-1441 (La. App. 1st Cir. 9/18/15), 2015 WL 5515017, at *16 (unpublished).

In sentencing the defendant, the trial court stated:

> This is the case of a 30 year old black male, namely Donovan Darville, who was found guilty of convicted felon in possession of a firearm, Louisiana R.S. 14:95.1, on September 11, 2019, by trial by jury. According to the Criminal Code of Procedure, anyone who commits the crime of convicted felon in possession of a firearm shall be imprisoned at hard labor for not less than five nor more than 20 years without the benefit of probation, parole or suspension of sentence, and be fined not less than $1,000.00 nor more than $5,000.00.

> Due to the facts of the [sic] this case and the defendant's history, it is clear that there is an undue risk that during the period of a suspended sentence or probation, the defendant will commit another crime, the defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution, and a lesser sentence will depreciate the seriousness of the defendant's crime.

> After thoroughly considering the facts of this case, The Court believes that the defendant should be sentenced as follows: It is the sentence of this Court that the defendant, Donovan Darville, be sentenced to 20 years at hard labor for the offense of convicted felon in possession of a firearm.

Although the trial court did not elaborate on the defendant's history, the record reflects that the defendant was previously convicted of two counts of simple

5

burglary pursuant to La. R.S. 14:62 on June 21, 2010.

In his counseled brief, the defendant argues the trial court failed to consider mitigating factors such as his history of substance abuse and his intoxication on the day of the offense. In his pro se brief, the defendant suggests that a sentence must be based on the circumstances of the instant case, including any problem such as mental illness or drug addiction.

This court has indicated that maximum sentences may be imposed only for the most serious offenses and the worst offenders, or when the offender poses an unusual risk to the public safety. *State v. Willis*, 2019-1236 (La. App. 1st Cir. 2/26/20), 2020 WL 913738, *2 (unpublished). In determining what constitutes an appropriate sentence, Louisiana courts have often considered the other offenses a defendant committed during the same criminal transaction leading to the prosecution for possession of a firearm by a convicted felon. *Id.* at *3. Based upon our review of the record, we conclude the facts surrounding the instant offense justified a maximum sentence. While the trial court did not engage in a detailed analysis in its reasons for sentencing, we find the record before us clearly establishes the defendant is a risk to public safety. As noted, the evidence at trial overwhelmingly established that the defendant shot an unarmed Clarence in the back of the head while he was walking away from the defendant. Moreover, the defendant indiscriminately kept firing his weapon in the direction of Clarence even after he had fallen. Several bullets went in or through the trailer that Clarence was trying to enter. Angel was already inside the trailer at the time the shots were fired and was grazed by one of the bullets. Finally, we note that evidence was presented to reflect that the attack upon the victim was calculated and without provocation. *See State v. Breland*, 97-2880 (La. App. 1st Cir. 11/6/98), 722 So.2d 51, 53.

Further, while it did not discuss intoxication or mental illness in its reasons for sentencing, the trial court, having conducted the entire trial, as well as having

appointed the sanity commission and finding the defendant competent to stand trial, was aware of these issues when sentencing the defendant.[2] As previously noted, the articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record, as here, clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1. *See Lanclos*, 419 So.2d at 478; *Scott*, 228 So.3d at 211.

Given these circumstances, we conclude that the trial court adequately considered the criteria of La. C.Cr.P. art. 894.1 and did not manifestly abuse its discretion in imposing the maximum sentence. The defendant's possession and use of a firearm in connection with the attack resulted in one of the most serious of offenses and evidenced that the defendant is the worst type of offender within the applicable classes of offenses. Accordingly, the sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive. The trial court did not err in denying the motion to reconsider sentence.

These counseled and pro se assignments of error are without merit.

## PRO SE ASSIGNMENT OF ERROR NO. 3

In his third pro se assignment of error, the defendant argues that the State improperly exercised peremptory challenges against prospective jurors on the basis of race.

---

[2] There was testimony at trial that the defendant had taken methamphetamine prior to shooting and killing Clarence. Whatever the defendant's intoxication level, which was never established, the jury's unanimous verdict was a refutation of any defense theory that the defendant was so intoxicated that he was not responsible for his actions.

In *Batson v. Kentucky*, 476 U.S. 79, 93-98, 106 S.Ct. 1712, 1721-1724, 90 L.Ed.2d 69 (1986), the United States Supreme Court adopted a three-step analysis to determine whether the constitutional rights of a defendant or prospective jurors have been infringed by impermissible discriminatory practices. First, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *State v. Handon*, 2006-0131 (La. App. 1st Cir. 12/28/06), 952 So.2d 53, 56; *see also Foster v. Chatman*, 578 U.S. 488, 136 S.Ct. 1737, 1747, 195 L.Ed.2d 1 (2016).

To establish a *prima facie* case, the defendant must show: (1) the defendant is a member of a cognizable group and the prosecutor exercised peremptory challenges to remove venire members of the defendant's race; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of his being a member of that cognizable group. *See Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. Without an inference that the prospective jurors were stricken because they are members of the targeted group, the defendant is unable to make a *prima facie* case of purposeful discrimination, and his *Batson* challenge expires at the threshold. *State v. Sparks*, 88-0017 (La. 5/11/11), 68 So.3d 435, 468, *cert. denied sub nom., El-Mumit v. Louisiana*, 566 U.S. 908, 132 S.Ct. 1794, 182 L.Ed.2d 621 (2012).

The trial court may "effectively collapse the first two stages of the *Batson* procedure, whether or not the defendant established a *prima facie* case of purposeful discrimination, and may then perform the critical third step of weighing

8

the defendant's proof and the prosecutor's race-neutral reasons to determine discriminatory intent." *State v. Jacobs*, 99-0991 (La. 5/15/01), 803 So.2d 933, 941, *cert. denied*, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002) (italics added). A trial judge may take into account not only whether a pattern of strikes against a suspect class of persons has emerged during voir dire, but also whether the opposing party's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. *See State v. Duncan*, 99-2615 (La. 10/16/01), 802 So.2d 533, 545, *cert. denied*, 536 U.S. 907, 122 S.Ct. 2362, 153 L.Ed. 2d 183 (2002).

The State, in presenting race-neutral reasons for its excusal of prospective jurors, need not present an explanation that is persuasive, or even plausible; unless a discriminatory intent is inherent in the State's explanation after review of the entire record, the reason offered will be deemed race-neutral. *Handon*, 952 So.2d at 58. For a *Batson* challenge to succeed, it is not enough that a discriminatory result be evidenced; rather, that result must ultimately be traced to a prohibited discriminatory purpose. Thus, the sole focus of the *Batson* inquiry is upon the intent of the opposing party at the time he exercised his peremptory strikes. *See State v. Green*, 94-0887 (La. 5/22/95), 655 So.2d 272, 287. A reviewing court owes the trial court's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. *Handon*, 952 So.2d at 58. *See State v. Jackson*, 2016-1565 (La. App. 1st Cir. 10/12/17), 232 So.3d 628, 633, *writ denied*, 2017-1944 (La. 5/25/18), 243 So.3d 566.

Citing *Batson*, the defendant contends there was error in black jurors being struck for cause, resulting in jurors being selected who were not the defendant's peers. The defendant also points out that black jurors were struck with peremptory challenges. He makes no argument and does not address any struck potential juror by name, but suggests that the issue could be resolved by eliminating peremptory

challenges entirely in criminal cases.

At any rate, we note that *Batson* has no applicability to challenges for cause. *See* La. C.Cr.P. art. 795. Our review of the record reveals that the prosecutor used peremptory strikes on three black jurors. The trial court found that these strikes were based on race-neutral reasons, and we find no reason to disturb the findings of the trial court.

In the first panel of voir dire, prospective jurors Tara Caster and Shynice Jackson indicated during the prosecutor's discussion on reasonable doubt, they would need 100% certainty to convict. Caster stated she would require a higher standard ("I need 100") than reasonable doubt, and Jackson indicated she felt the same way as Caster.

During this line of questioning by the prosecutor on reasonable doubt, the trial court intervened and explained to the prospective jurors that if picked, they would have to put their personal feelings aside and follow the law. The trial court asked Caster if she would be able to do that, and Caster replied, "Yes." Later, when defense counsel questioned Jackson about the reasonable doubt standard, Jackson indicated she would be able to follow the law.

The prosecutor peremptorily struck Caster and Jackson. Defense counsel made a *Batson* challenge, and the prosecutor indicated that during discussion about reasonable doubt, both prospective jurors indicated they needed 100% certainty to convict. Defense counsel replied he thought the prospective jurors were rehabilitated. In denying the *Batson* challenge based on what appears to have been an implicit recognition of the prosecutor's prerogative to doubt the veracity of a prospective juror, the trial court found in pertinent part:

> Well, yeah, and I agree with that but it kind of took me having to butt in to get firm with them to, you know, sort of rehabilitate them. I mean they did give some strong language regarding the reasonable [doubt] standard which I could see would be, you know, worrisome to a prosecutor.

In the second panel of voir dire, the prosecutor peremptorily struck Carl Davis. Defense counsel made a *Batson* challenge. The trial court asked for a race-neutral reason. The prosecutor noted that while Davis indicated he could be fair, he more than once stressed it was a "man's life" at issue, particularly during questioning about the mandatory life sentence. Davis expressed this same concern during questioning by defense counsel. The prosecutor felt Davis might be reluctant to convict because of the life sentence. The prosecutor pointed out to the trial court that even though Davis indicated he could be fair, the State felt he would not be fair. The trial court denied the *Batson* challenge.

After reviewing the record as a whole and considering the totality of the circumstances, we find that the State's race-neutral explanations were reasonable, and the proffered rationales had some basis in accepted trial strategy. *See Handon*, 952 So.2d at 59. While two prospective jurors who were stricken appeared to indicate they could be fair, the trial court was free, based upon all the information presented, to conclude that the reasons offered were in good faith and not a subterfuge for race. *See State v. Williams*, 96-1023 (La. 1/21/98), 708 So.2d 703, 727, *cert. denied*, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1988) (State's assertion that a juror appeared "weak, scary[,] and shaky on the death penalty" accepted as race-neutral reason when considered in the context of body language, etc.); *see also State v. Hoffman*, 98-3118 (La. 4/11/00), 768 So.2d 542, 559-60, *cert. denied*, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000). Moreover, the State's continued wariness of a prospective juror despite assurances the juror will remain impartial does not necessarily establish discriminatory purpose. *State v. Elie*, 2005-1569 (La. 7/10/06), 936 So.2d 791, 797, 800 (prospective juror's promise to be fair did not bind the State in its exercise of a peremptory challenge); *see Rice v. Collins*, 546 U.S. 333, 340-41, 126 S.Ct. 969, 975, 163 L.Ed.2d 824

(2006).

The transcript does not reveal any evidence that the use of peremptory strikes by the prosecutor was motivated by impermissible considerations. *See Handon*, 952 So.2d at 59. The defendant's argument lacks merit and presents no reversible error. Once race-neutral reasons were provided, the issue of whether a *prima facie* case had been established was moot. *See Green*, 655 So.2d at 288. The trial court was well within its discretion to allow the peremptory challenges in light of the race-neutral reasons provided by the prosecution. Accordingly, we find no abuse of discretion by the trial court in its denial of the defendant's *Batson* challenges regarding these prospective jurors.

This pro se assignment of error is without merit.

### PRO SE ASSIGNMENT OF ERROR NO. 4

In his fourth pro se assignment of error, the defendant states "Inconsistent statements." The defendant then avers that "the witnesses' testimony" was inconsistent with the State's evidence.

This is the extent of the defendant's argument on the insufficiency of evidence. Pursuant to Uniform Rules - Courts of Appeal, Rule 2-12.4, all assignments of error and issues for review must be briefed, and the appellate court may consider as abandoned any assignment of error or issue for review which has not been briefed. A mere statement of an assignment of error in a brief does not constitute the briefing of the assignment. *State v. Duffy*, 51,734 (La. App. 2nd Cir. 1/10/18), 245 So.3d 340, 345. The defendant's pro se brief merely lists the above assignment of error and provides a single conclusory allegation. The defendant has failed to provide any factual references, discussion, arguments, or legal authority to support this claim. Because the defendant failed to properly brief this assignment of error, this issue is considered abandoned. *See State v. Davis*, 52,517 (La. App. 2nd Cir. 5/22/19), 273 So.3d 670, 693-94, *writ denied*, 2019-00928 (La. 11/25/19),

12

283 So.3d 496; *see State v. Ferguson*, 2015-0427 (La. App. 1st Cir. 9/18/15), 181 So.3d 120, 141, *writ denied*, 2015-1919 (La. 11/18/16), 210 So.3d 282; *State v. Martin*, 2011-32 (La. App. 3rd Cir. 6/1/11), 66 So.3d 608, 616, *writ denied*, 2011-1441 (La. 12/16/11), 76 So.3d 1201.

This pro se assignment of error is without merit.

## PRO SE ASSIGNMENT OF ERROR NO. 5

In his fifth pro se assignment of error, the defendant argues the trial court erred in denying his right to a speedy trial pursuant to La. C.Cr.P. art. 701.

Once a defendant has been tried and convicted, any allegation of a violation pursuant to La. C.Cr.P. art. 701 is moot. *State v. Odom*, 2003-1772 (La. App. 1st Cir. 4/2/04), 878 So.2d 582, 593, *writ denied*, 2004-1105 (La. 10/8/04), 883 So.2d 1026.

This pro se assignment of error is without merit.

## PRO SE ASSIGNMENT OF ERROR NO. 6

In his sixth pro se assignment of error, the defendant argues the trial court erred in ignoring the claim of ineffective assistance of counsel.

In his supplemental brief, the defendant does not point to or address any instances where trial counsel was ineffective. A claim of ineffective assistance of counsel is generally relegated to post-conviction relief, unless the record permits definitive resolution on appeal. Decisions relating to investigation, preparation, and strategy cannot possibly be reviewed on appeal. *State v. Dantin*, 2019-0407 (La. App. 1st Cir. 12/17/19), 291 So.3d 1096, 1102. The defendant's allegations of ineffective assistance of counsel cannot be sufficiently investigated from an inspection of the record alone. Accordingly, whatever allegations the defendant may be asserting are more properly reserved for an application for post-conviction relief, subject to the requirements of Louisiana Code of Criminal Procedure articles 924 through 930.9. *See Id.*

## REVIEW FOR ERROR

Pursuant to La. C.Cr.P. art. 920, this court routinely conducts a review for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. After a careful review of the record, we have found a sentencing error.

Upon conviction for being a convicted felon in possession of a firearm, La. R.S. 14:95.1(B) mandates imposition of a fine of not less than $1,000.00 nor more than $5,000.00. The trial court did not impose a fine. Although the failure to impose the fine is error under La. C.Cr.P. art. 920(2), it is not inherently prejudicial to the defendant. Because the trial court's failure to impose the fine was not raised by the State, we are not required to take any action. As such, we decline to correct the illegally lenient sentence imposed on count two. *See State v. Price*, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 123-25 (*en banc*), *writ denied*, 2007-0130 (La. 2/22/08), 976 So.2d 1277; *see also State v. Zeno*, 2015-0763 (La. App. 1st Cir. 11/9/15), 2015 WL 6951581, at *6 (unpublished), *writ denied*, 2015-2233 (La. 12/16/16), 212 So.3d 1175.

**CONVICTION AND SENTENCE AFFIRMED.**